# Maffitt's Administrator *et al. versus* Rynd *et al.*, for the use of Lamb.

1. Although a conveyance of land with a parol trust to hold for the benefit of the grantor be not enforceable under the Act of April 22d 1856, yet a parol declaration of trust by the grantee after its conversion into money, will impress the proceeds with the trust.

2. The act does not raise a bar to enforcing a parol declaration of trust as to personal estate.

3. Creditors of a debtor bought real estate in their name under a mutual agreement that the debtor should take charge of it at a salary, and when their advances and debts should be paid from it, the surplus should be the debtor's. It was afterwards conveyed to Maffitt, he agreeing by parol to hold it upon the same condition. The real estate was sold and a surplus remained, which Maffitt acknowledged was subject to the trust. *Held*, that from this, the law implied a promise by Maffitt to pay the debtor.

4. Notwithstanding the Act of 1856, an absolute deed can be shown by parol to have been a mortgage.

5. A mortgage may be given to secure future advances, whether for the mortgagor or third persons.

6. Suit was brought by the debtor against Maffitt: during the trial the court allowed an amendment by inserting the names of the creditors " to the use of " the debtor. *Held*, not to be error.

7. The refusal of the court to grant a continuance on an allegation of surprise on account of the amendment, is not reviewable in the Supreme Court.

8. When an amendment in the names of the parties is allowed after the jury are sworn, they should be resworn according to the amended condition of the record.

October 13th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county*: No. 189 to October and November Term 1870.

This was an action of assumpsit brought April 2d 1869, by Lewis Lamb against Minas Tindle, administrator, &c., of John Maffitt, deceased, and James Old, surviving John Maffitt, late partners as Maffitt & Old.

The claim of the plaintiff was, that having been in embarrassed

[Maffitt's Administrator *v.* Rynd.]

circumstances, certain of his friends, who were also his creditors, desiring to do something for his benefit, advanced money and purchased real estate to set him up in business in a planing-mill, for conducting which he was to receive a salary, and after their advances and his indebtedness to them should be paid, the property purchased should be for his benefit. By changes in the original arrangement, detailed in the evidence, the real estate was conveyed to Maffitt & Old, by absolute deed, with the understanding that they should carry out the original agreement; they ,sold the land, leaving a surplus, after paying the liabilities, amounting as he alleged to about $3400, of which he had received $1700 or thereabouts from Old. This suit was brought to recover the remainder. Maffitt died in 1866.

The case was tried November 10th 1869, before Kirkpatrick, J.

The plaintiff gave in evidence an agreement, dated January 1st 1857, viz. :—

"Whereas, Lewis Lamb is indebted to the undersigned persons in various sums of money, and is unable to pay the same; and the undersigned, a portion of his friends and creditors, desire to furnish the said Lewis Lamb with employment by means whereof he may support his family, do hereby agree to and among ourselves, and to and with the said Lamb, as follows, viz. : That in addition to said Lamb's present indebtedness to us, we will advance an additional amount, so that Brewer, Rynd & Co.'s, Maffitt, Old & Bailiff's, J. & A. Patterson's, J. & H. Forrester's, Wm. P. Eichbaum's, Robert H. Davis's, William Stroud's entire claims shall be, &c., (setting out each claim).

"The money so advanced shall be vested in the purchase or lease of a certain lot or lots in Allegheny City, and in the erection of a building and machinery thereon suitable for a planing-mill, to be called the Union Planing-Mills, wherein shall be carried on the usual business that appertains to a planing-mill; that said Lewis Lamb shall have the management thereof at a compensation of $500 per year, he giving his undivided attention to the business, and * * * be subject to the absolute control of a committee, to be appointed by the parties thereto. The said Lewis Lamb shall keep a correct account of all the receipts and expenses of the concern. * * * At the end of every six months from the first day of January 1857, and oftener, if required by the committee, he shall render a just and true account of all the receipts, expenses and disbursements * * * that it may be ascertained if it be for the interest of the parties furnishing the means to continue the business, and if a majority in interest of the parties shall decide that it is not for their interest to continue, then the business shall be closed, and all the property sold off to the best advantage, and after paying all debts the proceeds divided *pro rata*, according to the sums which each may have in the concern as heretofore stated.

In case of any profits having been made, they shall be divided from time to time in the same *pro rata* proportion. * * * In case the parties who shall have furnished means to carry on said business, shall have received from the profits of the concern moneys sufficient to repay them the entire amount of their advancements, together with the amount of said Lamb's indebtedness to them, including all interest on said amounts, then they will convey to Monila, the wife of said Lamb, their entire interest in the concern. The general supervision of the concern shall be under a committee of five, which, until otherwise directed, * * * shall consist of James B. Rynd, R. H. Davis, James Old, W. P. Eichbaum, and A. Patterson, to whose direction the said Lamb shall always be subject, and for any sufficient cause he may be dismissed from employment altogether." * * *

James Rynd, one of the parties, testified for the plaintiff: That the company purchased three lots and erected on them a planing-mill with the machinery; it was called The Union Planing-Mill. It was arranged that A. Patterson, one of the parties, should take charge of the mill; Lamb's son was to go in with him, and Lamb himself was to attend to it. Afterwards (about April 1862), the other parties bought out Patterson for $3000.

On the 19th of May 1863, they conveyed the real estate to James Maffitt and James Old, by absolute deed in fee-simple.

This deed being given in evidence, the plaintiff offered to prove, that it was in fact a mortgage and was made as security for the payment of all the debts of Lamb; and that the surplus money was to be for him, and that the deed had been given and received for that purpose. The defendants objected to the offer, as being incompetent of proof by parol; it was admitted by the court and a bill of exceptions sealed.

The witness said:—

"My understanding was and is up to this day, from the parties and the tenor of the transaction, not from Mr. Maffitt, Old seemed to be the representative of Maffitt & Old; that Mr. Maffitt was to take this property and pay off Mr. Patterson, and carry it on for Mr. Lamb; we did not want Mr. Lamb to appear in it; he had been burnt out, and there were many small debts, and we wanted to keep the control of it, and after the debts were paid to transfer the property to Mrs. Lamb, as we supposed these small debts would follow Lamb; I suppose he has paid the most of these debts during our administration; the concern was burnt down after this deed was made; Lamb gathered up the old materials and made about $1000 out of it, which he paid to Mr. Old; those carrying on the business got the insurance of the concern about $4000; we came to the conclusion that Mr. Patterson was not carrying on the business profitably, and we concluded that one person should take the concern; Mr. Old finally agreed to take

the concern and run it on for the benefit of Mr. Lamb; of course he was to be protected as to his $3000, paid to Patterson; after he was paid I don't know what was to be done with the property; Maffitt, Old and Bailiff were in partnership at the time of this agreement; Old represented the firm; this arrangement was for the purpose of paying this indebtedness, and after it was paid off the balance was to go to Mrs. Lamb; it was to protect him from his outside creditors; * * * Mr. Old took this conveyance with the understanding that he was to pay off A. Patterson; my understanding was that the business was carried on for the benefit of Mr. Lamb; * * * I think the last account there was something yet due the firm of Brewer, Rynd & Co., which I made a gift of to Mr. Lamb; I have no claim on Mr. Old or Mr. Lamb now."

James Old testified under objection and exception: "Lamb was not indebted to us at the date of this agreement; one object of entering into this agreement was to dispose of some trade we had; another object was to assist him; Maffitt and Old furnished him an engine about 1857 or 1858; amount $1250; the maker charged Maffitt & Old, and we charged the Union Planing-Mill; anything we furnished to that mill was charged in that way. Mr. Lamb hadn't succeeded, and the Union Mill was embarrassed; after consultation we signed all our claim against the mill to A. Patterson and L. Lamb; we deferred giving the deed until he had lifted the obligations, and I talked to Mr. Maffitt and we purchased from Mr. Patterson; a deed was made from Rynd and others to us, with the understanding that when we got our money back we would transfer it over to Louis Lamb; shortly after this arrangement the mill burnt down, and we drew the insurance; we agreed to sell the lot to the Pittsburg and Connellsville Coal, Coke and Gas Company; I sold the lot for $3000, viz., $2000 in mortgage and $1000 in stock of company; Mr. Tindle has since received the money on the mortgage; Mr. Maffitt was charged with the stock; Mr. Maffitt and I agreed to this arrangement, and we agreed to transfer the property after we were paid to Mr. Lamb; the understanding when we took the property was that we were to take the property, and when we got our money back then transfer the balance to L. Lamb; we had two accounts, one against the Union Mill and the other against L. Lamb; Maffitt & Old have been paid the amount advanced by them. This understanding was between Mr. Maffitt, Mr. Lamb and myself, before the deed was made; Mr. Lamb paid no money for this deed; we receive no consideration from Mr. Lamb for this; understanding it was entirely gratuitous on our part and for the purpose of saving ourselves; * * * it was worth double the amount; we had no understanding with · Rynd and the grantors in the deed that after we had been paid the amount we advanced and the amount we paid to Patterson, that we would transfer the surplus

to Mr. Lamb, except that I stated to them we would do that; there was no indebtedness at that time except the amount of Mr. Patterson's claim to the amount of $3000, which we agreed to pay and have paid, as the consideration of this conveyance; at the time this deed was made neither the Union-Mill nor Lamb owed us anything; we had surrendered all claims against it on condition that Mr. Patterson would pay the claims against the mill; there was no indebtedness to us except the $3000 which we agreed to pay Patterson as the consideration for the deed."

He testified that there was an indebtedness of about $700 against the mill, incurred under the management of Patterson and Lamb, against which, Maffitt & Old agreed to indemnify Patterson before he would join in the conveyance to them; this was an after consideration of Patterson, after all the terms and conditions for which the conveyance was to be made had been agreed to.

The witness further said that Lamb was present at the arrangement for the sale to Maffitt & Old, and knew all about it, and that Maffitt assented to it; that the deed was taken by Maffitt & Old on the conditions stated, " to be carried out in good faith ;· * * * I have paid Mr. Lamb something over $1700 on this claim sued on in this action; what I supposed to be my proportion * * * the balance coming to him is $1719.42."

There was much other evidence from the parties to the agreement of 1857, substantially the same as that of the preceding witnesses; that the whole understood object of the conveyance to Maffitt & Old was to carry out the original agreement.

After much of the evidence had been received, the plaintiff moved to amend the record so as to read " James Rynd (and the other parties to the agreement naming them) to the use of Lewis Lamb." The amendment was allowed, against the objection of the defendants. The defendants alleged surprise and asked a continuance, which was refused. A bill of exceptions was sealed for the defendants.

There was evidence of repeated acknowledgments by Maffitt to Oscar Lamb (the son) and others, after the sale of the property, that there was a surplus which belonged to Lamb, and of Maffitt's promises to pay this surplus.

The defendants gave in evidence an agreement, dated June 4th 1863, by which Maffitt & Old agreed to indemnify Patterson against all liabilities of the planing-mill.

The defendants submitted a number of points, involving the questions : 1. Whether since the Act of April 22d 1856, § 4 (Pamph. L. 533, Purd. 497, pl. 3), an absolute deed can be shown by parol to be a mortgage, and 2. Whether there was sufficient evidence for the jury that the deed to Maffitt & Old was a mortgage. The court decided both these questions against the defendants.

The verdict was for the plaintiff for $1738.61, subject to the

question reserved: "Whether or not the plaintiff is precluded from his recovery by virtue of the provisions of the 4th and 6th sections of the Act of 22d of April 1856."

The court afterwards entered judgment on the verdict for the plaintiff on the reserved point.

The defendants took out a writ of error.

They assigned 15 errors; 13 related to the rulings of the court on the trial as to evidence, and the points submitted; the 1st was ordering the amendment of the record, and the 15th was the entry of judgment for the plaintiff on the reserved question.

*W. W. Thomson* and *D. Reed*, for plaintiff in error.—The deed to Maffitt & Old was not a mortgage, but a deed of trust: 2 Black. 157; 1 Hilliard on Mortgages 2, 362, 366; 1 Washburne on Real Prop. 475–495, 553–554; Coote on Mortgages 514; Taylor *v.* Cornelius, 10 P. F. Smith 187; McMenomy *v.* Ferrers, 3 Johns. R. 71; Hewitt *v.* Huling, 1 Jones 27. Since the Act of 1856 a trust in lands can be proved in no other way than by writing: Barnet *v.* Dougherty, 8 Casey 371; except in the case of resulting trusts, raised from fraud in obtaining the title, or from payment of the purchase-money: Kellum *v.* Smith, 9 Id. 158.

*J. H. Hampton* (with whom were *J. Dalzell* and *A. H. Miller*), for defendants in error.—Maffitt & Old, having got the title to the property, under the terms of the verbal agreement, cannot now defend solely upon the ground that the deed is absolute on its face. It was proved that the surplus, after payment of the debts, was to be held in trust for Lewis Lamb: Todd *v.* Campbell, 8 Casey 250; De France *v.* De France, 10 Id. 385; Beegle *v.* Wentz, 5 P. F. Smith 369; Williard *v.* Williard, 6 Id. 119; Clark *v.* Trindle, 2 Id. 492; Stoever *v.* Stoever, 9 S. & R. 434. They cited also Holdship *v.* Patterson, 7 Watts 547; Norris *v.* Johnston, 5 Barr 287; Eyrick *v.* Hetrick, 1 Harris 488; Rees *v.* Livingston, 5 Wright 113.

The opinion of the court was delivered, January 9th 1872, by

Sharswood, J.—This case might have been presented to the court and jury on the trial below in a way which would have precluded all question. Had the offer of the parol evidence in regard to the alleged trust or mortgage (in whichever light the transaction might be viewed) arising on the conveyance from James Rynd and others to Maffitt & Old, dated May 19th 1863, been as introductory only to evidence with which it was to be followed, that after Maffitt & Old had sold the land to the Pittsburg and Connellsville Coal, Coke and Gas Company on the 5th of January 1865, and received in payment $1000 in stock of the company, and their mortgage on the property for $2000, they severally and

19 P. F. Smith—25

[*Maffitt's Administrator v. Rynd.*]

distinctly acknowledged that they held the personal property into which the realty had thus been converted for Louis Lamb—that it was his property—there would have been no doubt to raise about its admissibility.    For assuredly it cannot be disputed that if a deed of land be made to A. and B. upon a parol trust that they will hold for the benefit of the grantor, or a third person—which parol trust cannot be enforced against the land, in consequence of the 4th section of the Act of April 22d 1856, Pamph. L. 533 —yet if they sell the land and convert it into money, a parol declaration made by them, subsequently to such sale and conversion, will be entirely effectual.    The statute raises no bar as to the enforcement of a parol declaration of trust in respect to personal estate.    From the acknowledgment that the personal property realized from the sale belonged to Louis Lamb, the law would imply a promise, supported by the moral obligation, resulting from the original engagement, to pay the money when its actual conversion into money took place to him, or to the grantors in the deed to them, for the use and benefit of whoever might be beneficially entitled thereto.    If the case had been made to turn upon this state of the facts, instead of drawing in other questions really extraneous, there never was a clearer or more conclusive one upon all the evidence, and that without contradiction, submitted to a jury.    James Old, one of the defendants called by the plaintiffs to the witness stand, acknowledged the trust, and testified that he had paid to Louis Lamb his half of the money, the proceeds of the land.    If James Maffitt had been living he would doubtless have done the same, but unfortunately he was deceased, and his administrator thought it necessary for his own protection to make this defence, and to remove the cause to this court for review.    Oscar Lamb, however, testified to Mr. Maffitt's distinct and clear acknowledgment to him after the sale to the coal company, "that the surplus arising from the sale of these lots, after the mortgage was paid, and the Patterson debt was paid, belonged to my father; he once offered to transfer this mortgage to my father, and he offered at one time to pay in the stock of this company; he always acknowledged there was a balance coming to my father, at least the amount of the sales of these lots, $3000; he acknowledged it at least six times."    There was no evidence in the cause, from the beginning to the end, which cast a shadow upon this testimony, but everything sustained and confirms it.

We must deal with the case, however, as presented on the record, and determine whether the learned judge below committed any error of which the plaintiffs have the right to complain. Fifteen errors have been assigned, but it will be found that they may all be disposed of by the consideration of two questions. First, whether since the Act of April 22d 1856, an absolute conveyance can be shown by parol evidence to have been a mortgage?

Second, whether the evidence in this case was sufficient to submit to the jury that the deed of May 19th 1863 was a mortgage?

As to the first of these questions, it is to be observed that in England, where the 7th and 8th sections of the statute 29 Car. II., cap. 3, are almost literally identical with the 4th section of the Act of April 22d 1856, it has always been considered not to be inconsistent with their provisions to show by parol evidence that an absolute deed was intended by the parties as merely a security for the payment of money. In truth, in every instance in which this is made to appear, there is necessarily implied an agreement by the grantee to execute a written defeasance, whenever required, and this is ruled in several of the earlier cases to be a sufficient ground for the interposition of a court of equity: Maxwell v. Montacut, Prec. in Ch. 526; Walker v. Walker, 2 Atk. 99; Johnes v. Stytham, 3 Id. 389. Other authorities are collected in 3 Leading Cases in Equity 608, 628, by Hare and Wallace, where the learned American editor discusses the question. In Russell v. Southard, 12 How. 139, Mr. Justice Curtis, delivering the opinion of the Supreme Court of the United States, remarks: "To insist on what was really a mortgage as a sale is in equity a fraud, which cannot be successfully practised under the shelter of any written papers, however precise and complete they may appear to be." And again: "It is the doctrine of this court, that when it is alleged and proved that a loan on security was really intended, and the defendant sets up the loan as a payment of purchase-money, and the conveyance as a sale, both fraud and a vice in the consideration are sufficiently averred and proved, to require a court of equity to hold the transaction to be a mortgage." It cannot be maintained, therefore, that the Act of April 22d 1856 has made any alteration in what has always heretofore been the established rule on this subject in Pennsylvania, where equity is part of the law, whether administered through common-law forms, or by bill and answer: Wharf v. Howell, 5 Binn. 499; Kunkle v. Wolfersberger, 6 Watts 126; Morris v. Nixon, 1 How. (S. C.) 118; Todd v. Campbell, 8 Casey 250; Rhines v. Baird, 5 Wright 256.

The second question presents no real difficulty. It appears to have been assumed by the learned counsel of the defendants below in their points in writing presented to the court, that unless the grantors in the conveyance of May 19th 1863 were indebted to the grantees it could not be a mortgage, but could only be a trust, which, not being manifested by writing, was utterly void by the act. But this was evidently a mistake. It has been long settled that a mortgage may be executed to secure future advances, and it matters not whether such advances be for the use of the mortgagor or of a third person: Lyle v. Ducomb, 5 Binn. 585; Irwin v. Tabb, 17 S. & R. 419; Garber v. Henry, 6 Watts 57. The

[Maffitt's Administrator *v.* Rynd.]

conveyance by Rynd and others to Maffitt & Old, was to secure them for the $3000 paid to Patterson for his interest in the Union Planing-Mill Company, some $700 which Mr. Lamb was indebted to that concern, and $1250 of an old indebtedness of Mr. Lamb to Maffitt & Old, which they had released without payment, and they were to hold the property until they realized their entire money out of it. The mortgagors were trustees for Mr. or Mrs. Lamb by the written agreement which had been previously executed between the parties, of which Maffitt & Old had full notice. So far as the question before us is concerned, it matters not whether the trust was for Mr. or Mrs. Lamb. We think there was evidence which justified the learned judge in leaving it to the jury to determine whether the deed of May 19th 1863 was or was not a mortgage.

There was no error in allowing the amendment in the names of the parties : Lycoming County Mutual Ins. Co. *v.* Schreffler, 8 Wright 273 ; Barnhill *v.* Haigh, 3 P. F. Smith 165 ; Downey *v.* Garard, 12 Harris 52 ; Walthour *v.* Spangler, 7 Casey 523. If the defendants were taken by surprise and were not prepared to meet the case in this new aspect of it, they rightly applied for a continuance, but the refusal of it is not reviewable here. It seems, however, proper to remark, that wherever an amendment is allowed in the names of the parties, after the jury have been sworn, it is the most regular practice to re-swear the jury according to the amended style of the action.

Judgment affirmed.