# Ballentine *versus* White.

1. The 4th sect. of Act of April 22d 1856 (Frauds), requiring declarations of trust, &c., to be in writing, is prospective.

2. The 4th sect. of Act of 1856 made no alteration in the rule theretofore existing, which allowed a deed absolute on its face to be shown by parol to be a mortgage.

3. The words "to enforce an equity of redemption," in the 6th section of the Act of 1856, are confined to such an equity, "after re-entry made for any condition broken;" they do not apply to the equity of redemption of a mortgagor.

4. Under the Act of April 15th 1869, a wife may be called by her husband as a witness, notwithstanding she may be compelled on cross-examination to give testimony against him; the act provides for the competency of the witness, not for the effect of her testimony.

5. The refusal of a nonsuit is not a subject of review in the Supreme Court.

6. After direct evidence has been given as to the genuineness of writings, the testimony of experts is admissible, either to attack or support the instruments.

7. In equitable ejectments, the judge acts as chancellor, with the assistance of the jury, to determine the credibility of witnesses and questions of fact on conflicting evidence.

8. The character of the whole case must satisfy the chancellor that the equity is clearly, not doubtfully, established by the evidence, if believed.

9. As parties are now witnesses, if their testimony is in direct conflict: whether the chancery rule, that when the equity is distinctly denied by the defendant, the denial must prevail unless there be other evidence than the testimony of the plaintiff alone, shall operate; not decided.

10. Harper's Appeal, 14 P. F. Smith 320; Maffitt *v.* Rynd, 19 Id. 387, recognised.

October 6th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the District Court of *Allegheny county :* No. 126, to October and November Term 1873.

This was an action of ejectment, brought November 25th 1873, by E. C. White against Nathaniel Ballentine, for three lots of ground in Temperanceville, now in the city of Pittsburg.

The case was tried December 11th 1872, before Kirkpatrick, J.

The plaintiff gave in evidence a deed of perpetual lease, dated April 28th 1841, from Warden & Alexander to him, for the property in dispute, the consideration being $1 and a yearly rent of $36, with the right to purchase within six years on the payment of $600 : also a transfer of the property endorsed on the lease and dated April 1st 1855, by plaintiff to defendant.

The plaintiff testified that after he purchased the premises, he made considerable improvements, by which the property, including the purchase-money of the ground, which was $675, cost him about $3500.

The plaintiff then proposed to prove by the plaintiff and other witnesses, that the transfer of April 1st 1855, of the property in

dispute, was executed and delivered by plaintiff and wife, and accepted by defendant as security for indebtedness then existing and for money to be advanced and lent by defendant to plaintiff, to a sum not exceeding $2000, and was intended by the parties thereto as security for the same, and upon reimbursement for said indebtedness and money lent as aforesaid, the said property to be reconveyed to plaintiff.

The defendant objected to the offer: it was admitted and a bill of exceptions sealed.

Plaintiff testified that in 1850 he left the property and rented it to defendant, that at the time of the transfer he had considerable dealings with the defendant; he was indebted to defendant, who also became security for him, and was indebted to other people; he was to receive $120 to $125 rent for the property. * * *

"I proposed to Mr. Ballentine that if he would advance me money I would place in his hands my property as collateral security; he considered it a while and then proposed to do so. * * * The understanding was, that he was to hold this property for such money as he should advance and I should need; I proposed to him that he should hold this property for money that he had already advanced, for which I was liable and money he should advance; he agreed that he would do so; he told me I might get up an article such as suited me and he would examine it, and if it suited him he would accept it. I went and got it drawn up and we acknowledged it and he accepted it on those conditions; he was in possession; I still considered him my agent there. The purchase-money was still on the property, $600 on account of a lawsuit against the title of the village. We refused to pay the interest as citizens; there was something between $250 and $300 interest due to Warden and Alexander; I received from Mr. Ballentine, to the best of my recollection, about $931.60 some cents, from 1855 to 1860, and from 1860 to 1863 or 1864, to the best of my recollection, I think I received from $1200 to $1300, making some $2200 or $2300 that I received from him at different times. At the time we got the transfer made we put a nominal sum on it, $2000, independent of what was against it; that sum was named in the transfer when we had it written. On the subject of giving back the property he just said that as soon as he was reimbursed the money that I needed the property was to be mine again; he would hold it no longer. He repeated it two or three times; he would hold the property only as security, that that would be a perfect understanding. * * * The sum named in the transfer to be advanced was $2000; that sum was changed from $2000 to $1000; Mr. Ballentine told me he did it himself; he had been considering the matter over and he thought he would not be willing to advance that amount on the property. * * * In the spring of 1855, when I made this transfer I would not have taken less than from $4000

[Ballentine *v.* White.]

to $5000 for this property, in fact I did not want to sell it. * * * Taking the property altogether from 1855 to 1860 it ought to rent for $300 to $350 a year, from 1860 down to 1867 all the property ought to have rented for $600 a year, on an average, as far as I have been informed as to the value of property over there; at the present time, according to the way property on the other corner rented, not so valuable, it ought to rent for $900 or $1000 a year." * * *

The plaintiff testified as to other facts and transactions between himself and defendant to show that the property was held by defendant as collateral security for the payment of the indebtedness of plaintiff.

Plaintiff then offered his wife Mary White as a witness; defendant objected to her as incompetent; she was admitted and a bill of exceptions was sealed.

She testified in corroboration of the plaintiff.

A number of witnesses testified that the defendant had told them that he had taken the transfer of the property as collateral security for indebtedness of plaintiff to him; also that at various times previously to the bringing the suit, the defendant had said that he occupied the property as a tenant and as agent of the plaintiff. He gave much evidence also that the property was worth from $3500 to $4000 at the date of the transfer; that it was then worth about $300 rent and had increased up to 1867, and at the time of the trial to $900 rent.

The plaintiff having rested, the defendant moved the court to direct a nonsuit; the motion was refused.

The defendant testified in direct contradiction of the plaintiff's testimony; and generally in answer to his case. He gave in evidence also a large number of receipts, purporting to be signed by the plaintiff, for money paid by defendant to him.

Sarah Ballentine, wife of defendant, and J. M. Ballentine, his son, testified in contradiction of the plaintiff's statements.

A number of other witnesses in their testimony gave estimates of the value of the property, differing materially from those of plaintiff's witnesses.

In rebuttal, the plaintiff gave testimony tending to show that the receipts given in evidence by defendant were not genuine or had been altered.

He then called Robert Thorn, who testified that he was an insurance agent and had been for twenty years; his business involved the examination of writings and papers. The plaintiff then proposed to prove by him, "that the receipts offered in evidence have been altered and additions made thereto, and that the additions thereto were made at a different time than when the body of the receipt was written."

The defendant objected to the offer, it was allowed and a bill of exceptions sealed.

[Ballentine *v.* White.]

This witness and other experts testified that in their judgment the receipts had been altered, &c.

The defendant submitted the following points, which were refused :—

1. The action of the plaintiff is barred by the statute of 22d April 1856, and therefore he cannot recover.

2. The deed of plaintiff and wife to the defendant being absolute on its face, it cannot be turned into a mortgage, or conditional deed, by proving by parol a verbal condition or defeasance, and therefore the plaintiff cannot recover.

3. Upon the whole testimony in the case the plaintiff is not entitled to recover, and the verdict must be for the defendant.

To the third point the court further answered :

" We leave this to the jury, with instructions as to the character of the testimony necessary to enable him to recover, as suggested in our general charge."

The court charged :—

" Having thus recapitulated to you the leading facts in this case, and in answer to the various points of counsel instructed you as to the law of the case as specially prayed for, we shall conclude what we have to say as a court, by a few general rules, which we deem it our duty to submit to you, as controlling your deliberations and aiding you in determining your verdict.

" And first, We instruct that the burden of proof is wholly upon the plaintiff. Whilst this is true in every case, it is especially and particularly so, if such a remark may be made, of a case like the present. This is a case where the plaintiff seeks to set aside a deed absolute on its face and clear and distinct in its terms. A deed, too, not of his ancestor or party under whom he claims, but his own individual and personal deed. * * * The presumptions of the law are that when parties reduce their intentions to writing, that the writing is the highest and best evidence of such intention, and although by no means conclusive in this regard, it is certainly not asking too much of this or any plaintiff to show to the jury that his true intentions and meaning was thus and so conveyed.

" And second, As to the kind and character of the evidence by which the plaintiff must make out his case. It must be *clear*, it must be *satisfactory*, it must be *convincing*. It must be without cloud. It must be *satisfactory*. It must be of such a character as to satisfy your conscience.

" *It must be convincing*, i. e. of such a character as to convince, persuade and compel your judgment to the conclusion at which you arrive. Aside from all authority upon these essentials and requisites of the necessary evidence, their common sense and common justice are apparent. In laying down the rule then the plaintiff must make out his case, and that the burden is upon him,

we have already suggested a very few of the very many reasons that might be adduced in this regard. A deed is not likely to be thrust aside, and it should not be. There should be no mistake as to the clear, satisfactory and convincing character of the evidence by which, in the estimation and finding of a jury, such a result can be accomplished. The presumptions of the law are that a deed is what it purports to be, and it is also well and rightly and authoritatively settled that when parol proof (proof such as is here relied on) is relied on to show that a deed, absolute in form, such as this was intended by the parties, is a mortgage, it must be, as we have already instructed you, clear and convincing. And the adjudicated cases upon this subject, as is said by our own Supreme Court, go so far as to hold that the intention of the parties that it was to be a mortgage and not a conveyance, must be established by proof, not merely of declarations, but of facts and circumstances outside of the deed inconsistent with the idea of absolute purchase. So, too, that when a parol defence is set up (as in this case), it, the defeasance, should not only be proven to exist, but its terms should be established, else there could be no decree of foreclosure or redemption.

" This whole case is an equitable one. The plaintiff claims as a mortgage, seeking to redeem. This action, therefore, though in form an action of ejectment, is in substance and effect and virtually a bill in equity, brought by this plaintiff against this defendant, now some seventeen years in possession, to compel a reconveyance of the land. The principles of adjudication and method of determination applicable to a proceeding by bill in equity, must equally control, avail and have application in this action of ejectment. And a chancellor will not interfere when the form of the conveyance is such that it purports to form an indefeasible estate (such as this conveyance here and now upon trial), unless some equity is shown not founded on a mere verbal declaration of two parties, in connection with its absolute terms, but in facts and circumstances independent of the debt and of the verbal declarations, and although such facts and circumstances may be shown outside of the deed by the admission of the grantee (the defendant here), after all it is the facts and not the admissions which raise the equity on which, in an action of law such as this is, entitle the plaintiff to a recovery.

" In conclusion, gentlemen, I beg to say, and you will, I hope, so understand me, that I express no opinion upon the facts as disclosed by the testimony in this cause. This is for you and you alone, under the instructions which we have given you." * * *

The verdict was for the plaintiff.

The defendant took a writ of error and assigned for error :

1. Allowing plaintiff to show that the transfer was not absolute

[Ballentine *v.* White.]

but as collateral security for debts due to defendant and to be re-
conveyed when they were paid.

2. Admitting defendant's wife as a witness.

3. Refusing a nonsuit.

4. Admitting the testimony of experts as to the receipts.

5, 6, and 7. The answers to the defendant's points respectively.

*J. Barton* and *T. S. MacConnel* (with whom was *J. S. Mac-
Connel*), for plaintiff in error.

*D. T. Watson* and *H. W. Weir* (with whom was *R. Robb*), for
defendant in error.—The transfer being made in 1855 is not
affected by the Act of April 22d 1856, sect. 4, Pamph. L. 533, 1
Br. Purd. 724, pl. 3, that act not being retrospective : Lingenfelter
*v.* Ritchey, 8 P. F. Smith 488. A deed absolutely on its face may
by parol be proven to be a mortgage : Odenbaugh *v.* Bradford, 17
P. F. Smith 96 ; Maffitt *v.* Rynd, 19 Id. 380. The Act of April
22d 1856, sect. 6, Pamph. L. 532, provides that no action shall be
maintained to enforce an equity of redemption after re-entry made
for condition broken, except within five years after such trust
accrued with right of re-entry, &c., unless such trust, &c., shall
be in writing, &c. The clause " after re-entry for condition
broken," shows that this case is not within the 6th section of the
Act of 1856 : Harper's Appeal, 14 P. F. Smith 315. As to the
testimony of the experts they cited Fulton *v.* Hood, 10 Casey
365.

Mr. Justice SHARSWOOD delivered the opinion of the court,
November 9th 1874.

The first specification of error complains that the learned court
below admitted parol evidence to show that the transfer by White
to Ballentine, dated April 1st 1855, though in form an absolute
conveyance, was in reality intended by the parties as a mortgage
to secure indebtedness then existing, and money to be subsequently
loaned. The contention of the plaintiff in error is founded en-
tirely upon the fourth section of the Act of April 22d 1856,
Pamph. L. 533, but as the transfer in question was executed April
1st 1855, and that section is clearly prospective, as was held in
Lingenfelter *v.* Ritchey, 8 P. F. Smith 488, it is unnecessary to
consider this assignment further. It is, however, proper to add,
that this court has decided the question in Maffitt's Administrator
*v.* Rynd, 19 P. F. Smith 387, where it is said that " it cannot be
maintained that the Act of April 22d 1856, has made any altera-
tion in what has always heretofore been the established rule on
this subject in Pennsylvania." This also disposes of the sixth
assignment.

In immediate connection with these assignments may be consid-

[Ballentine *v.* White.]

ered the fifth, that the court erred in refusing to affirm the first point of the defendant below, that the action of the plaintiff was barred by the limitation enacted in the sixth section of the same act. This point has also been heretofore considered by this court and determined adversely to the present contention of this plaintiff in error, in Harper's Appeal, 14 P. F. Smith 320. It is there shown that the words " to enforce an equity of redemption," upon which reliance is placed, are confined to such an equity " after re-entry made for any condition broken," and have no application to the equity of redemption of a mortgagor.

The third assignment of error is that the court erred in allowing the wife of the plaintiff to testify for him. But the language of the Act of April 15th 1869, is very explicit, that neither interest nor policy of law shall exclude a party or person from being a witness in any civil proceeding. And the proviso only excepts the case of husband and wife testifying against each other. It is argued, as I understand, that as the wife must be subjected to cross-examination, she may thereby be compelled to give testimony against her husband. But so may her testimony in chief be when offered in behalf of her husband. He may have utterly misapprehended the effect of it, or indeed, may have been mistaken as to what it would be. The act is providing for the competency of the witness for the party for whom she is offered, not as to the effect of the testimony. She is offered for her husband on his behalf. When admitted, as by the act she must be, her husband must take all the risks of what her evidence will be, whether upon examination in chief or cross-examination.

As to the third assignment of error, that the court erred in refusing the nonsuit asked for by the defendant, it is clear that such refusal is not the subject of review in this court : Girard *v.* Gettig, 2 Binn. 234. The only proper course, as is pointed out in that case, is for the defendant to present the point or points upon which the nonsuit is asked, and request the answers of the court to them in their instructions to the jury.

The fourth assignment of error is, that the court erred in admitting the testimony of so-called experts in regard to receipts which were in evidence. It was alleged, and direct evidence was given by the plaintiff below to prove, that the receipts had been altered, and then experts were offered to show that these alterations were not made at the same time with the body of the receipt. It was ruled in Fulton *v.* Flood *et al.*, 10 Casey 365, that the testimony of experts is receivable, in corroboration of positive evidence, to prove that in their opinion the whole of an instrument was written by the same hand, with the same pen and ink, and at the same time. This case is indeed the converse of that, but the principle is undoubtedly the same, whether the evidence is of experts to attack or support the instrument.

[Ballentine *v.* White.]

It only remains to consider under the seventh assignment, whether upon the whole testimony, the case ought to have been, as it was, submitted to the jury. It is unquestionable, and is now horn-book law, in this state, that in controversies of this character —in equitable ejectments—the judge acts as chancellor, with the assistance of the jury, to determine the credibility of witnesses and questions of fact upon conflicting evidence. It is true that the character of the whole case as presented must be such as to satisfy the conscience of the chancellor, that the equity is clearly, not doubtfully, established by the evidence of the witnesses, if believed. How far he may be called on to exercise his discretion upon the credibility of witnesses it is not necessary to decide. That is now a very important question, since both parties are competent witnesses, and when their testimony is in direct conflict, the chancery rule may perhaps be invoked, that when the equity is distinctly denied by the defendant, his denial must prevail, unless other evidence be given than that of the plaintiff alone. In this case there was ample evidence by other witnesses than the plaintiff, both of acts and declarations by the defendant below, the plaintiff in error, to establish the equity, that the absolute deed was intended as a mere security for money·loaned and to be loaned.

Judgment affirmed.