Williams et ux. *v.* Moodhard, Appellant.

Argued January 29, 1941.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul,* with him *Emanuel Weiss,* for appellant.

*Charles W. Matten,* of *Matten & Matten,* with him *James Rick, 3rd,* for appellees.

OPINION BY MR. JUSTICE STERN, March 24, 1941:

This litigation—an unfortunate controversy between erstwhile friends of long standing—resulted in a verdict for plaintiffs in the sum of $13,434.80. A new trial must be granted because defendant was prevented from fully presenting his case.

Plaintiffs averred the facts to be as follows: In February, 1936, Cora M. Williams was the owner of a house and tract of land located on the Philadelphia Pike in Berks County. She and her husband, Thomas A. Williams, had given their bond, secured by a mortgage on this real estate, in the amount of $8,000, to Berks County Trust Company, which also held a judgment of $1,000 against the property. A further judgment lien of $3,675 was held by defendant, to whom there was owing the additional sum of $512 represented by a note of Mrs. Williams. There were also taxes due and unpaid, and plaintiffs were having difficulty in raising the money to meet these various obligations. Accordingly they entered into an oral agreement with defendant whereby they were to sell the property to him for a price equal to the sum total of the obligations thus enumerated, together with all interest and taxes due or to become due, defendant agreeing that he would resell the property as soon as possible at a reasonable price, would retain out of the proceeds the amounts expended by him, with interest, for and on account of the property until the time of such resale, and would pay the balance to plaintiffs. Pursuant to this agreement, plaintiffs, on February 26, 1936, executed a deed to defendant. In July, 1937, one L. F. LaMar offered $30,000 for the property provided he could get possession "in the near future"

(there were tenants then in occupancy under a lease which gave them sixty days time to vacate in case of a sale). This price was "reasonable" but defendant refused to accept it. Plaintiffs thereupon sued for, and recovered, the amount by which $30,000 exceeded the sum due defendant under the provisions of the agreement. Defendant appeals from the refusal of his motions for judgment n. o. v. and a new trial.

The first question that arises is whether plaintiffs' claim, based wholly as it is upon an oral agreement, is barred either by section 4 of the Statute of Frauds of April 22, 1856, P. L. 532, which invalidates any declaration or creation of a trust in real estate other than by writing signed by the party holding the title,[1] or by the Defeasance Act of June 8, 1881, P. L. 84, (amended by the Act of April 23, 1909, P. L. 137), which provides that a deed absolute on its face cannot be reduced to a mortgage unless the defeasance to the deed is in writing signed and delivered by the grantee to the grantor. That question is answered by the case of *Moran v. Munhall*, 204 Pa. 242, 53 A. 1094, which is directly in point. Moran conveyed a house and lot to Munhall, the consideration consisting of the amount of a mortgage on the property held by a trust company and of a note of Moran held by Munhall. Moran alleged that at the time of the conveyance it was orally agreed that the property was to be sold as soon as possible and any surplus remaining after payment of the amounts due Munhall should be paid to Moran. Munhall having resold the property, Moran brought suit for such surplus. Defendant relied wholly upon the Defeasance Act of 1881, but this court held the act to be inapplicable and that

---

[1] Notwithstanding the Act of 1856, it was held, prior to the Act of 1881, that an absolute deed could be shown by parol to be a mortgage: *Maffitt's Administrator v. Rynd,* 69 Pa. 380; *Ballentine v. White,* 77 Pa. 20; *Huoncker v. Merkey,* 102 Pa. 462; *Null v. Fries,* 110 Pa. 521, 1 A. 551; *Gaines v. Brockerhoff,* 136 Pa. 175, 19 A. 958.

Moran was entitled to recover, saying (pp. 246-248):
"He [Munhall] did not hold, nor agree to hold the
property in trust for Moran and pay to him the pro-
ceeds of sale. After the deed was delivered to Munhall,
the latter held it entirely free from any claim of Moran,
and Munhall could sell and convey to whomsoever he
chose. Any claim Moran had under the oral agreement
could be enforced only in an action of assumpsit entirely
independent of the conveyance. . . . The transaction
has no mark of a trust. . . . Nor was the transaction a
mortgage, a deed absolute on its face with an unrecorded
defeasance and thus coming under the inhibition of the
Act of 1881. . . . The parol agreement in no event con-
templates a reversion of the property to Moran. Mun-
hall may absolutely violate his agreement but Moran
cannot have recourse to the property to enforce his lia-
bility. . . . A sale would fix the surplus over and above
the consideration named in the deed and the oral promise
fixed his liability for that amount. But the agreement,
whether Munhall paid or refused to pay the excess, did
not change the estate which passed by the deed. By no
fair construction, then, can the agreement be held an
unrecorded defeasance under the Act of 1881." This was
in accord with such precedent authorities as *Benjamin
v. Zell,* 100 Pa. 33, and *Everhart's Appeal,* 106 Pa. 349,
and was followed by similar decisions in *Harrison v.
Ward,* 46 Pa. Superior Ct. 537, and *McBride v. Western
Pennsylvania Paper Co.,* 263 Pa. 345, 106 A. 720. In the
present case plaintiffs do not claim any right, title or
interest of, in or to the real estate, but only the sum
they would have received had defendant accepted a rea-
sonable offer for the property as he had agreed to do.
They could not compel defendant to sell or to reconvey
the property, but if he did sell it, or if he refused to
sell it as provided in the agreement, he became indebted
to them in an amount equal to the difference between
the selling price obtained or offered and the indebted-
ness due him. Thus it is clear that plaintiffs are not

seeking to enforce an oral trust in real estate, nor by oral testimony to reduce a deed absolute on its face to a mortgage.  Accordingly, neither the Act of 1856 nor that of 1881 constitutes an impediment to their recovery.

In addition to establishing the agreement alleged by them, it was incumbent upon plaintiffs to prove (1) that LaMar's offer was bona fide and its condition as to obtaining possession "in the near future" could have been met;  (2) that defendant received the necessary authority from them to accept the offer;  and (3) that he definitely rejected it.  On all these points, especially the second, the evidence presented by plaintiffs was tenuous.  Williams testified that according to the agreement $35,000 was to be "the asking price";  the minimum "was left open," but he, Williams, had the right to control the price if defendant wanted to sell for less than $35,000;  in another part of his testimony he said that it was for Mrs. Williams and defendant to determine whether or not the price was reasonable;  and, again, that there was no understanding as to how the parties should arrive at what was a reasonable price.  Mrs. Williams testified that a "reasonable" price was to be between $30,000 and $35,000, and that she, or she and her husband together, were to decide whether an offer between those limits should be accepted.  Reconciling this testimony as far as possible, it would seem that any offer below $35,000, as LaMar's was, would have to be submitted by defendant to Williams, or to Mrs. Williams, or to both, before he could accept it.  The evidence that either of them directed or authorized him to accept it was extremely sketchy.  However, we are not prepared to say that it was so far below minimum requirements that the court would have been justified in refusing to submit it to the jury or in granting the motion of defendant for judgment n. o. v.

Defendant testified that under his arrangement with plaintiffs he was forbidden to sell the property for less than $35,000, and it was for that reason he could not

accept LaMar's offer without an authorization from plaintiffs, which he never received. His version of the oral agreement was very different from that of plaintiffs. According to his account, the transaction by which the "Pike property" was conveyed to him in February, 1936, had its inception in one which had taken place about a year before. Plaintiffs, in addition to that property, owned, in December, 1934, a building at 328 Penn Street, Reading. They had given their bond in the sum of $27,000 to Berks County Trust Company secured by a mortgage upon both the Penn Street and the Pike properties. They were in default in the payment of interest on this obligation and of taxes on the properties and were threatened with foreclosure; they were also indebted to the Trust Company on one judgment of $1,000 and another on which there was a balance due of $273.28. Plaintiffs appealed to defendant for financial aid, and he agreed with them, in accordance with a suggestion made by the Trust Company, that the Penn Street property should be released from the lien of the $27,000 mortgage and then be conveyed to defendant who would execute and deliver his personal bond secured by a mortgage on the Penn Street property to the Trust Company for $19,000, and that a credit of that amount should be entered on the $27,000 mortgage, the lien, as thus reduced to $8,000, being restricted to the Pike property. This plan was carried out and conveyance of the Penn Street property made on December 21, 1934. It was further agreed that defendant would advance the sum of $3,675 to be used in paying the arrears of interest and taxes on both properties and the balance of $273.28 on one of the debts owed to the Trust Company, defendant taking a judgment note for this loan; that both the Pike property and the Penn Street property were thereafter to stand as security for all moneys advanced and all obligations assumed and incurred by defendant in connection with

either or both of them; that plaintiffs would try to find a buyer for the properties at a price, to be determined by them, of not less than $19,000 for the Penn Street and $35,000 for the Pike property; and that, if sales could be effected at such prices, all of defendant's claims should be paid to him and the balance, if any, inure to the benefit of plaintiffs. Plaintiffs were to vacate the Pike property and occupy the Penn Street property at a certain specified rental, but they failed to do this, thereby compelling defendant to expend additional sums for carrying charges. Because of this fact, and because, also, plaintiffs requested and received from defendant a further loan of $512 to discharge a claim of one of their creditors, it was agreed that plaintiffs should convey the Pike property to defendant. This was done on February 26, 1936, plaintiffs again agreeing that the Pike property and the Penn Street property should not be sold at prices less than $35,000 and $19,000 respectively, and that out of the proceeds of a resale of either or both defendant should reimburse himself for all payments made and obligations incurred by him with respect to both properties, and pay the balance to plaintiffs. Thus it was defendant's contention that under his agreement with plaintiffs he was to be entitled, upon sale of the Pike property, to retain from the proceeds a sum not only covering the moneys advanced by him in connection with that property, but also indemnifying him against his liability on the bond of $19,000 given in the Penn Street property transaction and compensating him for subsequent payments of carrying charges on that property. On this basis nothing would be payable to plaintiffs out of a sale price of $30,000 for the Pike property. Defendant insisted that he was not actuated in either of the transactions with plaintiffs by any motive of profit, but only by a desire to help them out of their difficulties. He asserted his willingness to reconvey both properties to them upon

receiving the money due him and being relieved of his liability on the $19,000 bond and for taxes assessed against the properties while registered in his name.

The court refused to allow defendant to testify as to the agreement alleged by him to have been made in December, 1934, when the Penn Street property was conveyed, on the ground that testimony that it was conveyed as security instead of absolutely would be an attempt to establish a parol defeasance in violation of the Act of 1881. Plaintiffs claimed that both the Penn Street and Pike properties were *sold* to defendant; the latter's version was that both were conveyed to him as security only. Curiously enough, he was allowed, without objection on the part of plaintiffs or hindrance by the court, to testify to the February, 1936, agreement, according to which, as he claimed, the Pike property was conveyed to him merely as security, although there, too, the deed was absolute on its face; indeed the learned trial judge, in his charge to the jury, several times explained to them that such was defendant's contention. It is therefore difficult to understand why defendant was not permitted also to testify that the Penn Street property, and the Pike property as well, according to the agreement made at the time of the conveyance of the former in December, 1934, were to stand as security for the outlays and obligations incurred or to be incurred by defendant on both properties. It has frequently been pointed out that the sole purpose of the statute of frauds is to prevent a fraudulent claim of an interest in land resting on parol evidence; it is designed only to protect the holder of the title by forbidding the assertion of a right or interest in real estate by one who can show no written basis for the claim. Therefore the title holder may waive the benefit of the statute, and may state in his pleadings, or in his testimony in the proceedings, that he did in fact enter into an oral agreement when the title was conveyed to him, and, if he does so state, the oral agreement will be en-

forced by the court: *Prospect Dye Works v. Federal Insurance Company,* 33 Pa. Superior Ct. 223, 226; *Hammett v. Monongahela Trust Co.,* 223 Pa. 247, 251, 72 A. 512, 513; *Sferra v. Urling,* 328 Pa. 161, 167, 168, 195 A. 422, 425, 426. Thus a parol trust becomes a valid and enforceable one if, in the course of litigation, it is confessed by the trustee: *Kauffman v. Kauffman,* 266 Pa. 270, 275, 109 A. 640, 642; *Faunce v. McCorkle,* 321 Pa. 116, 119, 183 A. 926, 927; *Metzger v. Metzger,* 338 Pa. 564, 571, 14 A. 2d 285, 288, 289.[2] There would seem to be no basis for a distinction between permitting a grantee in a deed absolute on its face to confess that he holds the property under a parol trust and his right under such a deed to assert that he holds title subject to a defeasance. Indeed, under the amendatory Act of April 23, 1909, P. L. 137, he could at any time execute the defeasance in writing and thus make the transaction conform with the requirement of the statute. It is suggested by the court below that in the case of the Penn Street property it was to the *advantage* of defendant to say that the property was held by him only as security. Even were we to assume, however, that if some collateral gain would result to a grantee by admitting he held as a trustee or mortgagee this would

---

[2] Such cases as *Burkhart v. Farmers' Union Association and Fire Insurance Co.,* 11 Pa. Superior Ct. 280; *Bemis v. Harborcreek Mutual Fire Insurance Co.,* 200 Pa. 340, 49 A. 769, and *O'Connor v. Decker,* 30 Pa. Superior Ct. 579, discussed by counsel, have no bearing upon this question, as they involve merely the interpretation of clauses in insurance policies providing against a change of title of the property insured or other than unconditional and sole ownership. Nor is *Brinton v. Davidson,* 308 Pa. 371, 162 A. 905, of any authoritative value in this connection, because it deals only with the reformation of a deed, one of the provisions of which was omitted by mutual mistake, and does not adopt the view expressed by the court below in that case (34 Dauphin Co. 416) that a grantee cannot assert that a deed to him absolute on its face was in reality a mortgage because of a parol agreement to that effect.

impair his right to assert the trust or defeasance, it is obvious in the present case that, even without such admission, and even though the conveyance in reality had been an absolute one, there was nothing to preclude defendant from claiming a parol agreement of plaintiffs to protect him against the liability assumed by him on the bond which he executed at the time of the conveyance of the Penn Street property; his added declaration, therefore, that the property was conveyed as security for that purpose was a concession to plaintiffs of a possible reversionary interest in the property which was not necessary to establish his claim to indemnity and did not itself constitute any advantage or benefit to him.

The testimony excluded by the court below was essential to defendant's case. A jury naturally would be reluctant to believe that plaintiffs agreed at the time of the conveyance of the Pike property—the main reason for which was merely to obtain from defendant a loan of $512—that out of the proceeds of a resale defendant should be allowed to retain not only his expenditures and obligations incurred in connection with that property but also the large obligation of $19,000 incurred in connection with the Penn Street property. But if defendant had been allowed to show that this agreement was only a reaffirmation of one made a year before when the Penn Street property was conveyed to him and when he assumed the liability of $19,000, and that by the agreement *then* made this obligation was to be protected by the security not only of the Penn Street but of the Pike property as well, defendant's contention would have been vitally reinforced. Because the refusal to allow him to present this testimony, bearing as it did on the main issue of the case, was an error immeasurably damaging to him, defendant is entitled to a new trial.

Judgment reversed and new trial granted.