## Park Lumber and Crate Co., Inc., v. Philadelphia Waste Paper Corp. et al.

*David Berger,* for plaintiff.

*Ginsburg & Weisberg* and *Dilworth, Paxson, Kalish & Green,* for defendants.

LEVINTHAL, J., June 20, 1952.—

### I. *Pleadings and Issues*

This is a bill in equity for specific performance of an oral lease for five years of part of a factory building.

Plaintiff corporation contends that it reached an agreement with defendant corporation, the owner of premises located at the Southwest corner of Twentieth Street and Washington Avenue, in Philadelphia, on the terms of a lease of a portion of the building, as embodied in exhibit 1 attached to the bill of complaint; that defendant refused to execute the lease as lessor because of a collateral dispute between it and the real estate broker over the manner of payment of commissions due him; that plaintiff was informed by defendant that they had a lease between them, notwithstanding the dispute between defendant and the broker; that plaintiff first withheld payment of rent and assumption of possession of premises until the lease would be executed by defendant; that plaintiff later paid the rent and assumed possession of the premises upon being again assured by defendant that there was in fact a complete agreement between them as to the lease; that considerable expense was incurred by plaintiff in moving into the demised premises and that defendant made extensive physical changes to the

premises in accordance with the provisions in the unexecuted lease; that defendant demanded payment by plaintiff of two years' rent in advance, and upon the refusal of plaintiff to make such payment, defendant gave plaintiff notice of eviction. Plaintiff prays for an order directing defendant to execute the lease agreed upon.

Defendant denies that a legal and formal lease agreement had been reached, and avers it never intended to be bound until a written lease would be executed. Defendant, relying upon the statute of frauds, contends that plaintiff is not entitled to the relief prayed for.

## II. *Findings of Fact*

1. Plaintiff is a corporation organized and existing under the laws of Pennsylvania with its place of business in the City of Philadelphia.

2. Defendant, Philadelphia Waste Paper Corp., is a corporation with its place of business in Philadelphia. Defendant, Maurice Denenberg, is president of the Philadelphia Waste Paper Corp., and the other defendants are officers, employes and/or stockholders of the Philadelphia Waste Paper Corp.

3. During the period of time when the operative facts giving rise to this action occurred, corporate defendant was and still is the owner in fee simple of certain premises located at the Southwest corner of Twentieth Street and Washington Avenue, in the City of Philadelphia.

4. After some preliminary negotiations, plaintiff and defendants met on April 18, 1950, in the office of counsel for defendants and orally agreed upon a lease of the premises to plaintiff upon the conditions and terms embodied in the writing attached to the bill as exhibit 1 thereof.

5. Differences between defendants and the real

estate broker, Frank G. Binswanger, over the manner of payment of the commissions to become due developed. This collateral disagreement resulted in defendants' refusal to sign the lease otherwise agreed upon.

6. At that time Maurice Denenberg, president of defendant corporation, requested Milton J. Kolansky, president of plaintiff corporation, to retire from the discussion until defendant and Binswanger would settle their disagreement. At that time Maurice Denenberg reassured plaintiff: "We have our lease."

7. Although the commission dispute was not settled, defendant, through its attorney, asked Mr. Kolansky to prepare the agreed provisions of the lease in final form and to have a copy of the lease executed by plaintiff and sent to defendant for its execution.

8. Plaintiff executed the proposed lease, of which exhibit 1 is a copy, and mailed it to defendant, with a check for advance rentals.

9. Defendant corporation never executed the lease but offered to execute it if all references to Frank G. Binswanger were deleted.

10. Use of the check tendered with the lease was made conditional upon coexecution of the lease by Frank G. Binswanger, the broker, on whose form the lease had been prepared.

11. Defendant objected to the limitation upon the use of the check, and through its duly authorized agent induced plaintiff to remove the condition from the check, by again reassuring plaintiff that there was a complete lease in existence as between plaintiff and defendant.

12. Plaintiff then went into possession, relying upon the oral expression of approval of the lease by defendant corporation.

13. Plaintiff incurred considerable expense in moving and relocating its office, machinery and raw materials.

14. Defendant corporation incurred considerable expense in making changes required by the lease to which the parties had orally agreed.

15. On June 19, 1950, defendant corporation, through its president, informed plaintiff that it had failed in its attempt to borrow money "on our lease" and requested plaintiff to pay two years' rent in advance. Upon rejection of this demand, defendant corporation, through its president, threatened he would "find a way of breaking" this lease.

16. Four days after this demand and its rejection, defendant on June 23, 1950, sent to plaintiff a letter purporting to be a notice to plaintiff to vacate the premises and to redeliver them to defendant on July 31, 1950.

### III. *Discussion*

The statute of frauds, Act of March 21, 1772, 1 Sm. L. 389, sec. 1, 33 PS §1, upon which defendant relies, requires that leases for a term of more than three years be in writing and signed by the lessor. Very early in the history of the statute in Pennsylvania, the Supreme Court announced an exception in cases where possession had been transferred pursuant to a clearly proved oral agreement, accompanied by improvements by the lessee. Chief Justice Tilghman, in Jones v. Peterman and another, 3 S. & R. 543, 546 (1817) declared:

"I will not say, however, that according to adjudged cases, a parol lease for more than three years, may not be taken out of the act, by delivery of possession, if the agreement be clearly proved. If attended with improvements by the lessee, it certainly would be established."

In Davis et al., v. Investment Land Co., 296 Pa. 449, (1929) the court dealt with the problem of whether or not an oral surrender of a leasehold interest in land—also required to be in writing by the statute

of frauds—could be upheld under circumstances which would result in irremediable hardships to the party relying on the oral agreement. The court, at p. 456, reiterated the equitable doctrine of Jones v. Peterman, supra:

"So, also, although this is not so clearly admitted by defendant, where, as here, the contract was so far performed as to render it inequitable to permit a defendant to interpose the bar of the statute, he will not be allowed to do so. In Hancock vs. Molloy, 187 Pa. 371, 379, quoting with approval from *Riggles vs. Erney*, 154 U. S. 244, we said: 'If the parol agreement be clearly and satisfactorily proved, and the plaintiff, relying upon such agreement and the promise of the defendant to perform his part, has done acts in part performance of such agreement to the knowledge of the defendants . . . acts which have so altered the relations of the parties as to prevent their restoration to their former condition . . . it would be a virtual fraud to allow the defendant to interpose the statute as a defense, and thus to secure to himself the benefit of what has been done in part performance.' It would be equally a fraud, under such circumstances, to refuse recovery to these plaintiffs who, on the faith of the contract and with the knowledge of defendant, so acted, at the request and for the benefit of the defendant, as to result in great and irremediable loss to them, if the contract is not enforced."

It is thus clear that parol agreements whereby leasehold interests are created or surrendered are enforcible where there is a change of possession referable to the oral agreement, together with improvements made upon the premises by the lessee or other equitable considerations.

It would appear, from an examination of the authorities in jurisdictions other than our own, that

improvements which will take an oral lease out of the statute may be made by the lessor as well as the lessee. Extensive improvements by a lessor, when they conform to the special requirements of the lessee, are just as reliable an indication of the existence of a long-term lease as those made by the lessee. This rule seems to have been universally adopted wherever the question has arisen. In 101 A. L. R. 185, the notewriter states:

"The authorities which have passed upon the specific question . . . are agreed that the making of alterations or improvements by the lessor to fit the rented premises for the use of the lessee, and as an inducement to the taking of a lease, constitutes such a part performance as takes the lease out of the Statute of Frauds and permits equitable enforcement by way of specific performance, at least where the structural changes do not add to the value of the freehold other than for the purpose of inducing the defendant to become a tenant."

It is of no significance that in most of the cases discussed in the note referred to the lessor himself was asserting the existence of a valid lease. The peculiar nature of the improvements are just as revealing, regardless of who is relying on the oral lease. We therefore conclude that the equitable doctrine of the cases above discussed may be applied to the instant case, for here there is uncontroverted testimony in the record showing the extent of the improvements made by the lessor and how they were peculiarly adapted to the lessee's needs and were otherwise valueless.

Though the improvements made in the instant case by the lessee are perhaps not sufficiently extensive, standing by themselves, to allow specific performance, the lessee has gone to considerable expense in moving its heavy equipment and supplies into these premises.

Surely, no reasonable businessman would incur such expenditure unless he had an agreement for a long-term lease. This factor of substantial expense of moving pursuant to an oral lease was recognized in the case of Smith v. Simon, 48 Lanc. 261 (1942), and was held to warrant specific performance in the face of a plea of the statute of frauds.

There is another factor in this case which impels us to grant plaintiff the relief it seeks. It is well settled in this State that a party cannot admit in his pleadings or at the hearing all the terms of the alleged parol contract and still plead the statute of frauds. Thus, in Zlotziver v. Zlotziver, 355 Pa. 299 (1946), Justice Horace Stern said, at p. 302:

". . . it is, of course, true that an oral agreement for the conveyance of land will not be enforced unless followed by change of possession and the making of such permanent improvements on the property as cannot be adequately compensated in damages: Glass vs. Tremellen, 294 Pa. 436, 144 A. 413; Brotman vs. Brotman, 353 Pa. 570, 46 A. 2d 175; Estate of Lena Hartzell, 114 Pa. Superior Ct. 190, 173 A. 842. The statute of frauds, however, does not absolutely invalidate an oral contract relating to land but is intended merely to guard against perjury on the part of one claiming under the alleged agreement. Accordingly, if the title holder admits, either in his pleadings or his testimony, that he did in fact enter into the contract, the purpose of the statute of frauds is served and the oral agreement will be enforced by the court: Sferro vs. Urling, 328 Pa. 161, 167, 168, 195 A. 422, 425, 426; Williams vs. Moodhard, 341 Pa. 273, 280, 281, 19 A. 2d 101, 104, 105; Shaffer vs. Shaffer, 344 Pa. 158, 161, 23 A. 2d 883, 885. Here defendant, in his testimony, admitted the making of the agreement as claimed by plaintiff. While he, as well as plaintiff's

lawyer, professed to regard it as 'tentative' in the sense that they thought there might be a chance for future reconciliation, there were no statements made by either of the parties which would justify such a viewpoint."

The purpose of the statute is to protect landlords from being defrauded by false and perjured claims. Where, as here, the claim is essentially admitted, the landlord needs no such protection. While defendant in the instant case denies that it is bound by its oral contract, it does not deny the operative facts from which we must conclude that there was in fact an oral contract between the parties. For instance, defendant admits that it offered to sign a lease exactly conforming to exhibit 1, provided all references to the agent or broker were deleted. By so doing it admits that all of the terms and conditions which plaintiff now seeks to impose upon defendant in this action were, at least in an informal manner, agreed upon by the parties to the lease.

IV. *Conclusions of Law*

1. On April 18, 1950, plaintiff and defendant corporations orally contracted for a lease of the premises herein discussed. Exhibit 1 is a written memorial of that contract.

2. The defense of the statute of frauds is not applicable for the following reasons:

(a) There was a change of possession pursuant to the oral lease coupled with substantial improvements by the lessor, which improvements were peculiarly suited to the needs of the lessee.

(b) There was a change of possession pursuant to the oral lease coupled with heavy expense of moving.

(c) There was a virtual admission of agreement to all the terms and conditions of the lease by defendant in its pleadings.

3. Plaintiff is entitled to retain possession of the premises for a term of five years in accordance with the terms, conditions, and provisions of exhibit 1.

4. Plaintiff is entitled to the equitable relief prayed for to prevent the irreparable harm which it will suffer unless given appropriate equitable relief.

### Decree Nisi

And now, to wit, June 20, 1952, defendants are ordered and directed to execute a lease for the portion of the building located at the Southwest corner of Twentieth Street and Washington Avenue, Philadelphia, conforming in its terms and provisions, in form and in substance, with exhibit 1 attached to the bill of complaint; it being, however, understood that all references to Frank G. Binswanger, real estate broker, and commissions due him, be deleted therefrom. Defendants shall execute said lease within 30 days from the date this decree nisi becomes final.