# Appeal of Lloyd, Huff & Watt.

82    485
33 SC 226
e 33 SC 228

On April 22d 1874, A. sold to B. at auction for $600, two town lots. No money was paid by B. at time of sale nor any writing signed to evidence the sale to him. On 21st of October 1874 he paid $200 cash, gave a judgment bond for the balance and received a deed. On the 7th of October C. obtained a judgment against B., and on the 22d of January 1875, A. entered judgment on the bond for balance of purchase-money unpaid. The lots were sold and the proceeds allotted to the judgment of C., which distribution A. contested. *Held*, that B. had such an equitable interest in the lots as was bound by the lien of the judgment of C., and when this equitable interest merged in the legal estate afterwards acquired the judgment attached to this latter estate, was a lien upon the same and entitled to the proceeds of sale.

[Appeal of Lloyd, Huff & Watt.]

October 26th 1876.   Before AGNEW, C. J., SHARSWOOD, MER-
CUR, GORDON, PAXSON and WOODWARD, JJ.   WILLIAMS, J., absent.

Appeal from the Court of Common Pleas, of *Westmoreland
county:* Of October and November Term 1876, No. 225.

This was the appeal of Lloyd, Huff & Watt, from the decree of
distribution of the proceeds of the sale of the real estate of A. B.
Bair.

On the 22d of April 1874, Lloyd, Huff & Watt made an auction
sale of town lots at Latrobe, Penna., and two of them were knocked
down for $613 to A. B. Bair.   The conditions of the sale were
that one-third of the purchase-money should be paid in hand, and
the balance in two annual payments, with interest to be secured by
a judgment bond, which conditions it appeared were in writing, and
posted up in one or two places on the day of sale.   Bair paid no
money on the day of sale, nor did it appear that he entered into
any arrangement at that time in writing or otherwise for the pay-
ment.   In May following he fenced and farmed the lots as they had
been marked off previous to the sale.

On the 21st of October 1874, Bair paid to Watt $200 in cash,
which was the first payment on the lots, gave his due-bill for $13,
and executed a judgment bond for $800, conditioned for the payment
of $200 on the 22d of April 1875 and 1876 respectively, with
interest, which amounts would make the balance of the purchase-
money.   On the same day the deed for the lots was delivered to Bair.

On the 7th of October 1874, William Pickersgill entered a judg-
ment against Bair, and on the 22d of January 1875, Lloyd, Huff
& Watt entered judgment on the bond given by Bair for the pur-
chase-money, $200 of which, with interest, were unpaid.   The lots
in dispute were sold and the proceeds in the sheriff's hands, $260,
were claimed by Pickersgill and Lloyd, Huff & Watt on their re-
spective judgments.

A schedule of distribution was made by the sheriff, who allotted
the fund after deducting costs to the Pickersgill judgment, to which
distribution Lloyd, Huff & Watt excepted and an auditor was
appointed to report on the exceptions.

In the exceptions filed with the auditor it was contended that
Bair had neither the legal nor equitable title to the lots in question
until the 21st of October 1874, when he paid the first money, gave
the judgment bond and accepted the deed, and that the judgment
of Lloyd, Huff & Watt, having been entered subsequently to that
date, fastened to the perfect title to the exclusion of the Pickersgill
judgment, which was entered while the full title was in the vendors
and could not be made to attach to the title of Bair except by scire
facias and a revival of the judgment.

The auditor decided that Bair had an equitable interest in the
land, which commenced at the time the property was knocked down
on the 22d of April 1874, and such an equitable estate as was

[Appeal of Lloyd, Huff & Watt.]

bound by the judgment of Pickersgill, entered on the 7th of October 1874, and that on the delivery of the deed by Watt on the 21st of October 1874, the equitable title merged in the legal title, and when the legal title was obtained the judgment attached and bound the united interest.

He therefore refused to sustain the exceptions to the distribution made by the sheriff, and reported the same distribution.

To this report Lloyd, Huff & Watt excepted, and the court overruled the exceptions and confirmed the report, from which decree this appeal is taken.

*H. D. Foster* and *J. F. Wentling*, for appellants.—There was no writing signed by Bair until October 21st 1874, until which time the sale was void under the Statute of Frauds. An equitable interest is an interest in land, which is within the words and spirit of the Statute of Frauds: Meason *v.* Kaine, 13 P. F. Smith 335. The statute was designed to operate upon contracts in the current of business and sales between individuals: King *v.* Gunnison, 4 Barr 172. The possession taken by Bair, in May 1874, was not such possession as would confer title upon him in the absence of other requirements necessary to take it out of the statute: Reed *v.* Reed, 2 Jones 117 ; Foster's Appeal, 3 Barr 79. The vendors, after six months' delay of vendee in complying with conditions of sale, were relieved, unless vendee had prepared a deed for execution and tendered the purchase-money: Poulson *v.* Ellis *et al.*, 10 P. F. Smith 134. The purchase was void until the delivery of deed: Barncord *v.* Kuhn, 12 Casey 389. Proof of parol contract for the sale of land, delivery of possession pursuant thereto, part payment of purchase-money, and valuable improvements, are the full measure of what is required to take a case out of the Statute of Frauds: Millikin *v.* Dravo, 17 P. F. Smith 230.

*Latta & Gill*, for appellees.—The vendee gave the vendors public notice that he accepted their conditions for the sale of the lots by bidding them off at a public auction. A writing signed by one party for the sale of land, or an offer to sell land, is binding on the party signing when accepted: M'Farson's Appeal, 1 Jones 503. The vendors recognised the validity of the sale of April 22d, and admitted possession of the lots in vendee by executing and delivering to him the deed. They are estopped from denying the validity of the sale after passing the legal title to the purchaser at the previous sale.

The judgment of the Supreme Court was entered November 6th 1876,

PER CURIAM.—The only question in this case is whether A. B. Bair had an equitable interest which could merge in the legal estate when acquired, and could in the meanwhile be bound by the lien

of a judgment.. He bought at a public auction, and afterwards entered into possession, whether with the assent of the vendors is now not material, as they have recognised his purchase by making a deed founded upon it. It is argued· that no estate passed to Bair, because no writing was signed to evidence the sale to him. This is true only in degree, not absolutely. Under· the statute against frauds and perjuries an estate at the will of the vendors passed to him ; and his possession taken under it could only be disturbed by the termination of their will. During the existence of this presumptive estate the judgment was entered and became a lien on his interest, whatever it was. When the vendors recognised this estate and possession, by a final conveyance under the contract, they waived the operation of the Statute of Frauds and gave their assent to the merger of the determinable estate in the fee. The principle of this will be seen in the cases of Christy *v.* Brien, 2 Harris 248 ; Houser *v.* Lamont, 5 P. F. Smith 312, and later cases recognising them. A vendor is not bound to set up the Statute of Frauds made for his protection, for in such case neither fraud nor perjury need be apprehended. There was not, therefore, anything to prevent the estate, acquired subject to their will, from merging in the fee when they chose to recognise it. They had it in their power to determine it, and protect their interest in that way ; or to secure their purchase-money by mortgage or immediate judgment, when recognising it. They chose to rest upon their bond without entering judgment, and thereby lost what they might have retained ; but this was their own negligence. Pickersgill's judgment was a lien on the defeasible estate, and when the estate was enlarged it attached to the fee, subject to the payment of the purchase-money, had the vendors retained their grasp upon it. Not doing this the entire fee became subject to the lien of the prior judgment, and it became entitled to the proceeds of sale.

Decree affirmed with costs to be paid by appellants and appeal dismissed.