OLIANA HANSON, Plaintiff, v. ALFRED HANSON and State Bank of Verona, a Corporation, Defendants.

(202 N. W. 645.)

**Equity — looks to substance of agreement to determine whether lien was created.**

1. Equity looks through the form to the substance of an agreement to determine whether a lien is created thereby.

**Liens — delivery of deed to grantor's wife to hold till grantee paid amount due, with delivery of account book to her with assent of grantee, held to create equitable lien.**

2. In the instant case one H., shortly prior to and in anticipation of death, determined to divide all his property among his wife and three sons. One son, Alfred, had prior thereto purchased a 120 acre tract of land from his father, under an oral contract and was indebted to his father for the purchase price of such land, and for various other items, aggregating in all $5,667.54. H. deter-

Note.—(2) Equitable lien for unpaid purchase money, see 10 R. C. L. 351; 4 R. C. L. Supp. 663; 5 R. C. L. Supp. 552.

mined to give his son Alfred a 160 acre tract of land and to give to his surviving wife the account which he held against Alfred. The account against Alfred was evidenced by entries in a certain book of account. At the same time and as a part of the same transaction, H. executed and delivered deeds to his other two sons; gave the account against Alfred to his surviving wife and delivered the book of account to her; executed a deed wherein Alfred was named as grantee, by which H. conveyed to Alfred both the 120 and 160 acre tracts of land, and delivered this deed to his wife with the specific direction that she should hold the same and not deliver it to Alfred until he paid her the account which H. had transferred to her. H.'s wife received the book of account and the deed. Alfred assented to the arrangement thus made and entered into possession of the lands. The deed has been retained by the surviving wife.

*Held*, that this agreement created an equitable lien upon the lands described in the deed in favor of the surviving wife.

**Statute of frauds — when available.**

3. The statute of frauds is not available unless its protection is invoked in some appropriate manner in the trial court.

Opinion filed December 31, 1924.

Equity, 21 C. J. § 164 p. 182 n. 99; § 190 p. 200 n. 6; § 199 p. 204 n. 63; § 200 p. 204 n. 68; § 205 p. 205 n. 84. Frauds, Statute of, 27 C. J. § 446 p. 368 n. 10. Liens, 37 C. J. § 18 p. 315 n. 68; § 19 p. 317 n. 80; § 20 p. 317 n. 81, 85.

From a judgment of the District Court of LaMoure County, *Wolfe, J.*, plaintiff appeals.

Reversed.

*Lemke & Weaver,* for appellant.

"A court of equity is the appropriate tribunal for enforcing an equitable lien." Jones, Liens, § 93. "The usual mode of enforcing an equitable lien is by an order of sale of the property to which it is attached." Perry v. Board of Missions, 102 N. Y. 99.

"It is settled beyond question that a court of equity is the appropriate tribunal for the enforcement of an equitable, as distinguished from a statutory or common law lien." 17 R. C. L. § 27 Liens.

"Lands, but not claims to lands may be sold by a court of equity to discharge a lien." 17 R. C. L. § 27. Blight v. Bank (Ky.) 17 Am. Dec. 136; Vallette v. White, Water Valley Canal Co. 4 McLean, 192; Ridgely v. Inglehart, 3 Bland, 540; 1 N. Y. S. R. 169; Pierce v. Palmer, 23 Hun, 507; Buchan v. Summer, 2 Barb. Ch. 165."

"An assignment of title deeds by way of security operates as an equitable mortgage on the interest in the land acquired by the plaintiff under the title deeds." Hill v. Eldrid, 49 Cal. 398; Grain v. Aldrich, 38 Cal. 514."

"An equitable mortgage may be created by deposit of the title deeds of a legal or equitable estate, as security for the payment of money, or by a conveyance legal in its form of an equitable estate for that purpose. If created in the former method it must be foreclosed by a suit in equity to establish the lien and for a sale, if the debt, interest and costs are not paid by a given day; but if by the latter it may be foreclosed in the original way." Marvis v. Dutcher, 16 Wis. 307. Deposit of title deeds have been held to create an equitable lien or mortgage in Gale v. Monis, 29 N. J. Eq. 222; Griffin v. Griffin, 18 N. J. Eq. 104; Hutzler v. Phillips, 26 S. C. 136; Hackett v. Reynold, 4 R. I. 512.

"Where a lien is given and no method of enforcement or foreclosure is provided, a court of equity in virtue of its general jurisdiction over liens and trusts will take jurisdiction to protect and foreclose such lien." Avery Drug Co. v. Ely Robertson Barlow Drug Co. 69 So. 931. See also § 167, 3 Pom. Eq. Jur. 2d ed."

"Where a mortgage at the time of taking his mortgage has knowledge or legal notice of a prior conveyance, mortgage or other lien on the property, he takes subject thereto." Boyd v. Boyd (Iowa) 104 N. W. 798; Ball v. Ball, 26 Wis. 390, 105 N. W. 953; First Nat. Bank v. Caldwell, 4 Dill. 314."

"An assignment of a debt is complete where there is a delivery of a book account." Porter v. Bulland, 26 Me. 448; Akin v. Meker, 60 N. Y. S. R. 697."

"The delivery of an unrecorded deed by the grantee to the grantor with the intention that it should operate as a mortgage to secure taxes and other advances while the property was unoccupied, and in the constructive possession of the grantor constituted a valid, equitable mortgage." Jennings v. Augir, 215 Fed. 658.

"If a transaction resolves itself into a security whatever may be its form and whatever name the parties may choose to give it, it is in equity a lien." Flagg v. Mann, 2 Sumn. 495, 533, 17 R. C. L. 604.

*Hutchinson & Lynch,* for respondent.

"It is held in England that on the deposit by a debtor of his title deeds as security for a loan, an equitable mortgage arises which is not within the statute. The English doctrine has some following in the United States but the most generally accepted American rule is to the contrary." 20 Cyc. at p. 223.

Koop v. Reiter, 22 L.R.A. 273; Bloomfield State Bank v. Miller, 44 L.R.A. 387, and 75 N. W. 569.

CHRISTIANSON, J. The defendant, State Bank of Verona, brought an action against the above named defendant, Alfred Hanson, and the above named plaintiff, Oliana Hanson, to foreclose a mortgage on certain lands in LaMoure County, in this state, which mortgage had been executed and delivered to it by the defendant, Alfred Hanson. Shortly thereafter the above named plaintiff, Oliana Hanson, brought this action to foreclose an equitable lien which she claimed upon the same premises. Alfred Hanson and State Bank of Verona were named as defendants therein. The defendant, Alfred Hanson, made default. The State Bank of Verona, interposed an answer wherein it asserted that its mortgage was a lien prior and superior to any lien plaintiff might have. The parties agreed that the two actions be tried together. They were so tried. In this case, viz.:—the action brought by Oliana Hanson to foreclose an equitable lien, the trial court held that the plaintiff did not have an "equitable lien which can be made the subject of foreclosure under our laws." Judgment was entered accordingly, and plaintiff has appealed.

The material facts are not in dispute, and were found by the trial court to be:

"That Johan Hanson, also known as J. J. Hanson was at the time of his death and prior thereto the husband of Oliana Hanson, the plaintiff herein, and the father of Alfred Hanson, one of the defendants herein, and that said Oliana Hanson is the step-mother of said Alfred Hanson.

"That at his death and prior thereto, Johan Hanson, owned of record and was the owner in fee of the southwest quarter of section Twenty-seven, and the north half and the southwest quarter of the southwest quarter of section Twenty-six, of township one hundred and

thirty-five, range fifty-nine, consisting of two hundred and eighty acres, together with other lands, in LaMoure county.

"That about 1915, said Johan Hanson made an oral arrangement for the sale of 120 acres of said land to his son Alfred Hanson, but that no part of the purchase price agreed upon was ever paid. That Alfred farmed said 120 acres during 1915 and 1916, and that no written contract or deed was ever entered into in connection with said arrangement.

"That shortly prior to, and in anticipation of, his death, Johan Hanson and Oliana Hanson, the plaintiff herein, and their children with the exception of Alfred, got together and agreed upon a division of the lands owned by said Johan Hanson, which division and agreement was carried out by making separate deeds of different tracts of land to the children of said Johan Hanson. These deeds were delivered to the children with the exception of the deed to Alfred Hanson, which was delivered to Oliana Hanson. This deed contained not only the One Hundred and Twenty acres mentioned above, but one hundred and sixty acres more, the consideration named being One Dollar.

"That the deed running to Alfred Hanson, in his absence, was with the account book in which was kept an account against Alfred Hanson for the sum of $5,667.54, delivered to Oliana Hanson, by Johan Hanson upon substantially the following conditions, as stated to her by her husband, 'You take this deed and this account. When Alfred pays you this account,' referring to the $5,667.54, 'that' (meaning the proceeds derived from the payment of the account), 'is yours. Do not deliver the deed to Alfred until he pays you that account.' That Oliana Hanson has had exclusive possession of said deed and account ever since they were delivered to her to the date of trial.

"That Alfred was informed of the arrangement between his father and mother with relation to the deed and the account, and, by his conduct, assented to and accepted that arrangement and went into possession of the land described and conveyed to him in the deed and farmed them for a year or so. He made no improvements and later abandoned the land and moved out of the State. He has never paid any part of the account given to Oliana Hanson, as her share of the estate.

"That after his father's death, and after he knew of the existence of

the deed and its terms and the condition upon which it was delivered to his step-mother, as security of the payment of the sum due from him to her, Alfred Hanson mortgaged said lands to the First State Bank of Verona, to secure a note of $1,762.30. At the time that said mortgage was given, the deed was in the possession of Oliana Hanson and had not been put on record, and had not been filed for record at the date of trial. The land conveyed in said deed to Alfred Hanson standing at all times on the books and records in the office of the Register of Deeds in the name of Johan Hanson. There is some evidence that the bank had knowledge of the conditions and terms under which the deed was delivered to Oliana Hanson, but that is disputed.

"That in the adjustment and division of his property Johan Hanson treated and considered the account against Alfred Hanson as an asset and part of his property and gave it to Oliana Hanson, his wife, as a part of the share of the property she was to receive. That the administrator of the estate of Johan Hanson treated the lands described in the deed as the lands of Alfred Hanson, subject to a lien created by the delivery of the deed to Oliana Hanson, to be held by her as security for the payment to her of the account of $5,667.54 by Alfred Hanson, and treated the account as belonging to Oliana Hanson, and not part of the estate.

"That unless Oliana Hanson has an equitable lien on the land described in the deed by virtue of the delivery to her of the account and the deed, a very substantial injustice may be done to her, and the land described in the deed will revert to and become part of the estate of Johan Hanson, subject to division among all the heirs."

From these findings of fact the trial court concluded, as a matter of law, "that the assignment and transfer of the account in the sum of $5,667.54, with interest thereon from and after January 1st, 1919 at the rate of 6% per annum, by delivery of the account book became a valid assignment of said account to Oliana Hanson by her husband Johan Hanson;" that said "Oliana Hanson is entitled to judgment against the defendant, Alfred Hanson, therefor"; but "that the deed under the circumstances herein does not grant an equitable lien which can be made the subject of a foreclosure under our laws."

In her brief, appellant says: "This case presents a single question of law. The question whether the deed herein under the circumstances

created an equitable lien which can be made the subject of foreclosure under our laws. We maintain that the deed created an equitable lien which can be foreclosed."

In our opinion appellant's contention must be sustained. Let us summarize the controlling facts: J. J. Hanson, being very ill, and anticipating death, determined to divide all his property among his wife and three sons. A considerable time prior thereto he had sold a 120 acre tract of land to his son Alfred, under an oral contract. Alfred had entered into possession of, and was then occupying, the land but had never paid the agreed purchase price. Alfred was also indebted to his father upon other transactions. The total amount of such indebtedness aggregated $5,667.54, and was evidenced by certain entries in a book of account. In making distribution of his property Hanson decided to give a 160 acre tract of land to his son Alfred; and to give to his wife the account which he then held against Alfred. Hanson was not satisfied, however, to merely transfer the account to his wife and make payment thereof dependent solely upon the personal obligation of his son Alfred. He wanted in some way to insure that the account would be paid. So, in order to carry out his intention, he executed a deed to his son Alfred, by the terms of which he conveyed to him the 160 acre tract of land and also the 120 acre tract. He delivered this deed to his wife, together with the book of account, with the direction that the deed should be held by her until Alfred paid her the stipulated sum. This proposition was accepted by both Alfred and his mother. The mother received the book of account and deed and has retained the same in her possession; and Alfred entered into possession of the lands under the arrangement made. Here, then, we have an express agreement between the parties; and we are not concerned with any doctrine as to what implications arise or do not arise upon the delivery of title deeds as security for the payment of money in the absence of such agreement. See, 3 Pom. Eq. Jur. p. 3056 and authorities cited. See also Roby v. Bismarck Nat. Bank, 4 N. D. 156, 50 Am. St. Rep. 633, 59 N. W. 719. The execution of the deed, and the delivery thereof to Mrs. Hanson, and the agreement that she should hold it until the claim which her husband transferred to her was paid were all parts of the same transaction. No part of it can be eliminated without doing violence to the intention of the grantor. As a result

of the transaction then had the plaintiff became the owner of the account and might maintain an action against Alfred therefor. Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592. And such was the holding of the trial court in this case. But the agreement between Alfred and his father and mother did not merely provide that Alfred should pay a stated sum to his mother; it further provided that the deed which the father executed and delivered to the mother should be held by her until Alfred paid her the stipulated sum. There can, we think, be no doubt as to the intention of the parties:—the father intended to make final disposition of all his property; he intended to convey the two tracts of land to Alfred; he intended to part with title to the property, and he executed a deed and placed the same beyond his control; but he did not intend that title should pass to Alfred, or that he should become the record owner, until he paid the stipulated sum to his mother. In other words, it is, we think, too clear for argument that the father intended that the claim which he had transferred to his wife should be a charge upon the land, and that the land should stand as security for the payment thereof. If Hanson had inserted a reservation to this effect in the deed such reservation would, of course, have constituted a lien upon the land not only as against Alfred but as against any one claiming under him. 3 Pom. Eq. Jur. 4th ed. p. 3035. Instead of inserting such reservation the grantor delivered the deed to the person to whom the grantee was required to make payment with direction that such person should hold the deed until the grantee had paid the stipulated claim. The grantee accepted and entered into possession of the land under the proposed arrangement. Equity regards substance rather than form; and regards that as done which ought to be done. In a transaction like this, equity looks at the final intent and purpose of the parties rather than at the form of the agreement; and if it appears that there was an intention to give or to charge property as security for an obligation "and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows." 3 Pom. Eq. Jur. 4th ed. § 1237, p. 2968; Ward v. Stark Bros. 91 Ark. 268, 121 S. W. 382.

Upon the record presented on this appeal, the existence and terms of the agreement between Alfred Hanson, and his father and mother

are not in dispute. They were established by uncontroverted testimony, and found by the trial court. And the correctness of such findings is not challenged. We are not concerned here with whether the agreement was or was not within the statute of frauds, for the statute was not invoked in any manner. Erickson v. Wiper, 33 N. D. 193, 203, 204, 157 N. W. 595.

While there is some conflict in the evidence as to the conversation had at the time Alfred Hanson executed and delivered the mortgage to the defendant bank, it is undisputed that some reference was made to an unrecorded deed,—that is, Alfred Hanson informed the bank that he was in possession under an unrecorded deed. The mortgage was executed and delivered with the understanding that the title, and the only title, hypothecated was vested in the mortgagor by such unrecorded deed. It was such title and no other that was supposed to be the basis of the mortgagor's title. If the unrecorded deed had contained a reservation of a lien in favor of the grantor in the deed or his assignee, the mortgage of the bank would, of course, have been subject thereto. The deed did not contain such reservation, but a reservation to that effect was attached to the delivery of the deed, and if the bank had made inquiry to ascertain the exact character of the title of its mortgagor under the unrecorded deed, it would have been informed of the condition attached to the delivery. It is true Alfred was in possession of the land; but such possession was by virtue of the transaction, of which the condition attached to the delivery of the deed was an integral part. The possession was notice to the bank of the rights which Alfred had in the land, and notice of such rights only, and it created no other or additional rights. 2 Devlin, Real Estate, 3d ed. pp. 1395, 1396; 27 R. C. L. p. 730.

The defendant bank has invoked the aid of equity to enforce the lien created by its mortgage. It is a maxim of equity jurisprudence that he who seeks equity must do equity. In this case a manifest injustice would result if the agreement upon which plaintiff's equitable lien is bottomed is set at naught. If that agreement is set at naught Hanson's intentions as regards the distribution of his property will be violated, and his surviving wife will not receive that share which he directed that she should receive. That agreement is prior in point of time to the mortgage of the defendant bank, and, in a sense, lies

at the very base of that mortgage. And while, we do not deem it of controlling importance here, it may be noted, in passing, that the evidence does not show that the defendant bank parted with any present consideration at the time the mortgage was executed; but it shows rather that the mortgage was executed at the solicitations of the bank to secure certain debts which Alfred Hanson then owed it for past transactions.

We are of the opinion that the agreement between Alfred and his father and mother created an equitable lien on the land in favor of the mother, which is prior and superior to the lien of the mortgage of the defendant bank; and that a court vested with equity jurisdiction has power to enforce such lien. 1 Jones, Liens, 3d ed. p. 88, § 93.

The judgment appealed from is reversed, and the cause remanded to the district court with directions to enter judgment in favor of the plaintiff for a foreclosure of her equitable lien. It is so ordered.

Bronson, Ch. J., and Johnson, Nuessle, and Birdzell, JJ., concur.