## Ellis v. Alexander.

*Statute of frauds—Oral agreements by joint-tenants as to payment of mortgages, taxes, etc.—Waiver of statute of frauds—Requests for findings in equity.*

1. On the sale of property in partition, mortgages, taxes, etc., should be charged against the shares of the parties in the fund raised by the sale in accordance with their agreement as to the payment of such charges.

2. Such an agreement is not within the statute of frauds.

3. A party waives the protection of the statute of frauds by testifying at length upon the subject of the contract without objection.

4. Where a party fails to object to the proof of an oral contract within the statute of frauds, he cannot thereafter claim the benefit of the statute in a request for a finding or a direction.

Exceptions to adjudication. C. P. No. 1, Phila. Co., March T., 1925, No. 12515, in Equity.

*G. H. Ditter,* for plaintiff; *J. F. Jenkinson,* for defendant.

TAULANE, J., Sept. 2, 1926.—This matter is before us on defendant's exceptions to the adjudication of the trial judge awarding partition.

The plaintiff and defendant are sisters, and in March, 1916, they purchased premises No. 6237 Walnut Street, taking title in their joint names. The property cost $4354, of which $1754 was paid in cash and the balance in an existing mortgage of $2600. The cash was contributed as follows: $1000 by the plaintiff, $54 by the defendant, and the balance from a building association mortgage of $700 made by the plaintiff and the defendant and secured on the property.

From the time of the purchase of the property in 1916 to the early part of 1925—when the plaintiff married and differences arose between the parties— the plaintiff paid the interest on the first mortgage and had the use of one of the rooms of the house when not engaged as a professional nurse, and the defendant occupied the rest of the house and paid the interest and dues on the building association mortgage as well as the taxes, water rent and repairs.

In May, 1925, the plaintiff filed a bill for partition, alleging that the property was subject to the two mortgages, and that she and the defendant were equal owners; she did not claim that their interests should be proportioned to their contributions to the purchase price.

The defendant in her answer denied that the plaintiff had a one-half interest, and alleged that the plaintiff loaned her $1000 to purchase the property; that the title was taken in their joint names to secure the plaintiff's loan;

Ellis v. Alexander.

that upon the repayment of the loan the plaintiff was to convey her interest to the defendant, and that the defendant had offered to repay the loan, which the plaintiff refused to accept.

The trial judge decided against the defendant on the defence alleged in the answer, and found that the plaintiff and defendant were equal owners. In this conclusion we concur. The defendant now concedes that the plaintiff is a joint owner, but complains that the decree for partition did not fix how much of the principal and interest of the mortgages should be charged to each party. This question was not raised at the trial, and is only vaguely suggested in the defendant's exceptions. Whether raised or not, it is our duty to settle it: Dunshee v. Dunshee, 234 Pa. 550, 555, and Burkley, v. Burkley, 266 Pa. 338, 342.

In the hope of establishing the oral agreement alleged in the answer, the defendant called the plaintiff for cross-examination; in this effort the defendant was wholly unsuccessful. The plaintiff, however, did testify, without objection or exception, that at the time of the purchase of the property she orally agreed with the defendant to pay the interest on the first mortgage of $2600 and $2000 of the principal, in consideration of the defendant paying the principal and interest of the building association mortgage, $600 of the principal of the first mortgage, and the taxes, water rent and repairs.

For some nine years this agreement was carried out until the parties quarreled.

We dismiss from consideration the testimony of the defendant and her husband concerning the oral agreement, because the agreement testified to by them seems unlikely and is radically different from the one alleged in the answer.

No satisfactory reason has been suggested why the plaintiff's oral agreement is not binding on her. Her counsel does not argue that the agreement is within the statute of frauds, but insists that the defendant cannot avail herself of it, because she has not contributed her $600 to the payment of the first mortgage.

The plaintiff, in seeking partition, frustrated the evident intention of the parties that the first mortgage should be paid off when the stock securing the building association mortgage matured. The covenants of the parties were dependent, and the plaintiff was just as much obliged to pay her $2000 as the defendant was her $600. The agreement is not within the statute of frauds. It does not affect or relate to an interest in land; it is concerned solely with the payment of the principal and interest of the mortgages secured on the property. Such an agreement is generally classified in the cases as a collateral one, and not within the statute: Devalinger v. Maxwell, 4 Pennewill (Del.), 185; Green v. Randall, 51 Vermont, 67; Archer v. Hall, 7 Weekly Repr. 222; Merriman v. Moore, 90 Pa. 78; Boston v. Boston, 1 K. B. 124 (1904); and Angell v. Duke, L. R., 10 Q. B. 174.

The mortgages, taxes, &c., should be charged against the shares of the parties in accordance with their agreement.

Our conclusion would not be different, under the facts of this case, if the oral agreement were within the statute of frauds. An oral agreement concerning an interest in land is legal, though unenforceable unless in writing (Maddison v. Alderson, L. R., 8 Appeal Cases, 467, 489), but the defence of the statute is a personal one and may be waived: Christy v. Brien, 14 Pa. 248, 250; Houser v. Lamont, 55 Pa. 311, 317; Lloyd's Appeal, 82 Pa. 485, 488; American Products Co. v. Refining Co., 275 Pa. 332, 335; and Story on Equity Jurisprudence (3rd Eng. ed.), par. 755.

Ellis v. Alexander.

The plaintiff waived the protection of the statute by testifying at length without objection: Hatcher v. Hatcher, 264 Pa. 105, 110; Huffine v. McCampbell, 257 S. W. Repr. (Tenn.) 80; and Brender v. Stratton, 216 Michigan, 166.

In Humphries v. Humphries, 2 K. B. 531, 537 (1910), Farwell, L. J., says: "It may well be expedient to avoid the risk of fraud and perjury when there is no written evidence of a contract relating to land, by refusing to allow any evidence of such a contract to be given; but where the evidence has actually been taken and the contract has been proved by parol to the satisfaction of the court, the reason for refusing it has disappeared, and a refusal to allow the contract to be sued upon would be an encouragement to dishonesty without any corresponding advantage to the public."

Had plaintiff's counsel objected to her cross-examination—and the agreement been within the statute—the objection would have been sustained.

Counsel for the defendant ingeniously suggests that the statute of frauds, which was designed to protect owners of land against false and perjured oral agreements, can have no application where the owner himself is called as a witness to prove the agreement. The statute is not susceptible of such an interpretation; its language is peremptory, as all the cases hold, that the agreement must be proved by a writing. Oral testimony of the person to be charged is not a writing.

Lord Blackburn, in Maddison v. Alderson, L. R., 8 Appeal Cases, 467, 488, points out that the statute requires a writing, though under the facts of a particular case there could be no likelihood of fraud or jury. He says:

"I think it is now finally settled that the true construction of the statute of frauds. both the 4th and the 17th sections, is not to render the contracts within them void, still less illegal, but is to render the kind of evidence required indispensable when it is sought to enforce the contract. At first this was not universally accepted as the true construction. It was thought by many very high authorities that the statute did not apply when, from the nature of the proof, there could be no risk of perjury. Sales by auction and sales negotiated through brokers were by some thought, for this reason, not to be within the statute. Lord Mansfield intimates such an opinion in Simon v. Motivos. I do not think it can be said to have been finally settled that such sales were within the statute till Schofield v. Kenworthy as late as 1924. And there are indications that great equity judges on a similar principle thought that whenever acts had been done which were such as to be consistent only with the existence of a contract, the case was taken out of the mischief of the statute and the only question was the sufficiency of the proof of what the contract was. I so understand some of Lord Hardwicke's remarks in Gunter v. Halsey and Lacon v. Mertins. This principle would apply whether the unequivocal act was a giving possession of the land or paying the price in whole or in part.

"As soon as it was established that the construction of the statute was not what had been supposed, and that a contract within the 4th section was not enforceable unless signed by or on behalf of the party to be charged, even though signed by the one party and accepted and kept by the other who was sought to be charged or otherwise unexceptionally proved, I think this class of cases ought to have been considered overruled."

There is no reason why an agreement, within the statute of frauds, should not be proved by the oral testimony of the person to be charged, but such a modification of the statute must come from the legislature. When the original statute of frauds and our Act of March 21, 1772, 1 Sm. Laws, 389, were

enacted, such an exception was not likely to occur to the draftsmen, as parties in those times were excluded as witnesses.

The Statute of Frauds of Iowa has such an exception, which reads as follows: "The oral evidence of the maker against whom the unwritten contract is sought to be enforced shall be competent to establish the same: Code, § 4627."

The courts of Iowa have uniformly held that the plaintiff, in calling the defendant to prove the oral agreement, is bound by his testimony, and he cannot be contradicted by other witnesses: Quaker Oats Co. v. Kidman, 189 Iowa, 906, 908.

While no objection was made to the plaintiff's testimony, yet in her sixth request for conclusions of law she requested the court to find as follows: "That no agreement prior or subsequent to March 21, 1916, except it be in writing, will affect the title to 6237 Walnut Street."

Where a party fails to object to the proof of an oral contract within the statute of frauds, he cannot thereafter claim the benefit of the statute in a request for a finding or direction: Montgomery v. Edwards, 46 Vermont, 151, 153; Eiseley v. Malchow, 9 Nebraska, 174, 180; Nunez v. Morgan, 77 California, 427, 430; and Eaves v. Vial, 98 Virginia, 134, 140.

And now, to wit, Sept. 2, 1926, it is ordered and decreed as follows, viz.:

(a) Defendant's exceptions Nos. 3, 4, 5, 8, 9, 17 and 20 are sustained and the others are dismissed.

(b) Plaintiff is entitled to partition.

(c) Plaintiff and defendant are equal tenants in common of premises No. 6237 Walnut Street.

(d) The share or interest of the plaintiff is chargeable with $2000 of the first mortgage of $2600, and interest on the full amount of the first mortgage from Aug. 2, 1924.

(e) The share or interest of the defendant is chargeable with $600 of the first mortgage, the principal and interest of the second mortgage of $700, and all taxes, water rents and repairs.

(f) The matter is referred to Clare G. Fenerty, Esq., to make partition according to the practice in equity.