Sferra, Appellant, *v.* Urling et al.

Argued October 4, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Forest G. Moorhead,* with him *John G. Marshall* and *George W. Moorhead,* of *Moorhead & Marshall,* for appellant.

*Frank E. Reed,* of *Bradshaw, McCreary & Reed,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

We held when this case was here before, 324 Pa. 344, that there was no abuse of discretionary power by the court below in opening a default judgment for rent, as there was sufficient evidence to support findings of a waiver of compliance with the covenant requiring written consent to an assignment of the lease, and the existence of an oral agreement whereby appellee was to pay rent on a percentage basis rather than in accordance with the provisions of the lease calling for fixed monthly payments. The facts were fully stated in that appeal.

This appeal is from the judgment in favor of the tenant, appellee, in a feigned issue of ejectment wherein appellants were the plaintiffs, and Urling and Slanicus

the defendants. Supplemental to its general verdict the jury expressly found that Slanicus was in possession as a tenant, and that there was an agreement changing the rent to a percentage basis.

Appellants' main contentions are that the failure of appellee to comply with the terms of the assignment prohibits him from claiming any rights under it, and that the terms of the oral agreement modifying the lease are so vague and lacking in precision as to render it void for uncertainty. Appellants reiterate the contention, pressed in the former appeal, that the provision in the lease requiring the lessors' assent in writing to an assignment is binding and not subject to waiver, and they now seek to avail themselves of the protection of the statute of frauds.

Consideration will first be directed to the subsidiary contention of appellants that section one of the Act of March 21, 1772, 1 Sm. L. 389, providing that oral leases exceeding the term of three years shall have the effect of estates at will only, prevents a parol modification of a written lease exceeding that period. As this question was not raised in the court below, and appellants refrained from pressing it seriously on the first appeal, it was not discussed when the case was here before. We might dismiss the question by observing our usual rule, that the case on the first appeal having been decided on the issues presented, returned to the court below for trial under the legal principles set forth, and tried under the law as there stated, it is too late on the second appeal to raise a new theory or objection that should have been presented at the first trial. Appellants now press vigorously the proposition that the statute of frauds invalidates the parol modification of the lease with respect to the rent due thereunder.

It appears that there is nothing in the present record giving the slightest intimation on their part to seek the protection of the statute either by a special plea, objection to the admission of evidence, or point for charge.

Appellants did not plead the statute of frauds in their answer to appellee's petition to intervene and open judgment; nor at the taking of depositions did they interpose an objection to the evidence adduced in proof of the parol modification of the rental provision; nor does it appear that they expressly brought this matter in any other form to the attention of the court below. The same is true in the present appeal. They failed to amend their answer to include the statute of frauds, and again they did not object to the admission of testimony for this reason. Is then section one of the Act of 1772, supra, a rule of substantive law, which must be applied by the trial court in spite of the fact it is not called to the court's attention in any manner, or is the failure to invoke the statute at some stage of the proceedings prior to appeal an irrevocable waiver of it by the party who would derive advantage from its application?

That considerable conflict exists among the authorities as to the necessity of invoking the statute of frauds by special plea or otherwise is made quite apparent from a review of the collection of cases to be found in 27 C. J. 368, et seq., and more recent cases. Some jurisdictions have adopted the rule that the statute of frauds must be specially pleaded in order to be taken advantage of at trial: *Sinclair v. Purdy,* 139 N. E. 255 (235 N. Y. 245); *Stout v. Fuqua,* 103 S. W. (2nd) 28 (Tenn., 1937).[1] Other jurisdictions relax this rule in the event of a denial of the existence of the oral contract, holding that the denial operates to invoke the statute by necessitating proof of a valid contract. Thus in *Jones v. Jones,* 63 S. W. (2nd) 146 (Mo., 1933), the court said a denial of the oral agreement, compelling proof of one which is invalid under the statute of frauds, is sufficient, pointing

---

[1] In *Troup v. Hunter,* 133 N. E. 56 (300 Ill. 110), the court said, "It is a settled principle in equity that a party, to avail himself of the benefit of the statute of frauds, must specially plead it. If he fails to . . . he will be deemed to have waived and renounced the advantages to be derived from its provisions."

out that it is only where the contract is admitted that the statute must be pleaded specially. See *Barnes v. P. & D. Mfg. Co.,* 187 A. 186 (117 N. J. L. 156), and *Kennedy v. Burns,* 101 S. E. 156 (84 W. Va. 701).[2]

The great weight of authority sustains the view that it is incumbent upon a party, who seeks to derive protection from the statute of frauds, even though he has entered a denial of the alleged oral contract, to make manifest his intention to invoke its aid either by way of special plea, objection to the admission of testimony, or point for charge to the jury, and if he fails to bring it to the attention of the court he will be deemed to have waived all right to lay claim to its protective features. See *Hanson v. Hanson,* 202 N. W. 645, 647 (52 N. D. 146); *Brown v. Kausche,* 167 Pac. 1075 (98 Wash. 470).[3]

---

[2] The correctness of this rule cannot be questioned, where the effect of the particular statute is to render all oral contracts of the class designated void as against public policy. Unfortunately most of the cases do not discuss this matter. It will be treated later in reference to the statute involved in the case at bar.

[3] The following cases are only a few of many which may be cited in support of the view that the statute of frauds must be brought to the attention of the trial court in some way, at least prior to the conclusion of the trial, if not sooner. In *Danciger Oil and Refining Company v. Wayman,* 37 P. (2nd) 976 (Okla. 1934), the court stated: "It is observed that defendant did not plead the statute of frauds. This question was not presented nor urged in the trial court. This court will not consider this question when presented and urged by defendant in this court for the first time on appeal." In *De Proy v. Progakis,* 259 S. W. 620 (Tex. 1923), the court said at p. 622: "It is well settled that, in order to avail himself of the benefits of the statute of frauds, he must invoke it by proper pleadings, or must object to testimony, when offered to prove a contract, which is in violation of the statute of frauds. In other words, a defense based on the statute of frauds may be waived, and if waived, a judgment, based upon a contract which is prohibited by the statute of frauds is not fundamentally erroneous by reason of that fact. The defense of the statute of frauds may be urged in the defendant's pleadings either by special exception or by special plea or by objection to testimony." See also *Central National Bank of*

Our research discloses no authority in this state directly settling the question of the necessity of invoking section one of the Act of 1772, supra. However, the question involved arose under section 4 of the Sales Act of May 19, 1915, P. L. 543, and in *Am. Products Co. v. Refining Co.*, 275 Pa. 332, opinion by Justice SADLER, we held that a denial of existence of an oral contract for the sale of oil was sufficient to permit defendant to invoke the statute of frauds after verdict on a motion for a judgment n. o. v., but that plaintiff could amend by averring facts which would remove the ban of the statute, being misled by defendant's failure to call attention to this defense either in his pleadings or during the reception of testimony to prove the existence of the oral agreement. The reason for the rule was that section 4 of the Sales Act expressly provides that contracts within its inhibition shall be "unenforceable," and thereby constitutes a "limitation on the power of the judiciary to afford a remedy," as distinguished from a "mere rule of evidence." Since all remedy for the enforcement of the contract was taken away, it was wholly outlawed by section 4, which could not be treated as a personal defense. The opinion, in commenting on the effect of the Act of 1772, supra, states at p. 335: "It is true certain personal defenses must be affirmatively set up and established, otherwise they are treated as waived; so, a failure to expressly aver the fact that the suit is barred by the statute of limitations prevents objection on this ground *(Barclay v. Barclay,* 206 Pa. 307; *Murphy v. Taylor,* 63 Pa. Superior Ct. 85), and a like ruling has been made where the attempt was to take advantage of the statute of frauds, enacted March 21, 1772, —a copy of the English statute of 29 Car. II,—not in-

*San Angelo v. Cox,* 96 S. W. (2nd) 746 (Tex. 1936); *Taplin v. Hinckley Fibre Company,* 122 A. 426 (97 Vermont 184); *Gilman v. McDaniels,* 158 N. W. 459, 461 (177 Iowa 76); *Harn v. Patterson,* 160 Pac. 924 (58 Okla. 694).

cluding however, sections 4 and 17: *Lloyd's App.*, 82 Pa. 485. Under that legislation, and because of the omissions, an action could still be maintained for damages arising from a breach of contract to sell land, though the agreement could not be specifically enforced: *Parrish v. Koons*, 1 Pars. Eq. Cases 78; *Stephens v. Barnes*, 30 Pa. Superior Ct. 127."

The statute of frauds does not absolutely outlaw oral contracts relating to land. It has long been established that a contract within the statute of frauds will be accorded full legal effect if those who are entitled to the protection of the statute choose to affirm the existence of the contract and recognize it as binding on them. See *Lloyd's Appeal*, 82 Pa. 485; *Christy v. Brien*, 14 Pa. 248. In *Houser v. Lamont*, 55 Pa. 311, this court stated at p. 317: "It is settled equity law that courts of equity will enforce specific performance of a contract within the Statute of Frauds, where it [the contract] is confessed in the answer of the defendant: 2 Story's Equity, section 755." It is pointed out that under a statute designed to guard against fraud and perjury in oral contracts there can be no danger when the contract is admitted, since it is not within the mischief intended to be guarded against.

The same is true under the Act of April 22, 1856, P. L. 532, section 4. The Act reads: "All trusts . . . of any lands . . ., and all grants and assignments thereof shall be manifested by writing, . . ., or else to be void: . . ." This language, though strong, does not outlaw all trust instruments which do not meet the required form, but they may be enforced providing those who would benefit do not choose to invoke the statute. It is well settled that this statute does not defeat the desire of a trustee to honestly perform an oral trust of an interest in land, but merely voids the trust at his option: *Faunce v. McCorkle*, 321 Pa. 116. If this is true under an act which provides that all contracts shall be "void," it applies with greater force to the Act of 1772, which

merely says oral leases of more than three years shall have the effect of tenancies at will. The real purpose to be attained by the statute of frauds is to prevent owners of land from having their interests taken from them or defeated by false testimony in support of oral agreements. It does not deprive agreements which do not come within its terms entirely of legal effect.[4] Where a vendor admits an oral agreement to sell land without invoking the statute of frauds, it constitutes a waiver of the statute. The same is true of a trustee's express willingness to perform an oral trust. The case of *Am.*

---

[4] In reaching the conclusion that section 1 of the Act of 1772, supra, and the Act of 1856, supra, do not void absolutely all contracts contrary to their mandates, full notice has been taken of the decisions of this court intimating that these statutes prescribe rules of substantive law and not mere rules of evidence. In *S. Dep. and T. Co. v. Coal & Coke Company*, 234 Pa. 100, this court, in an opinion by Justice MESTREZAT, stated at p. 112: "The statute is not a mere rule of evidence, but a limitation of judicial authority to afford a remedy." If the rule laid down is to be interpreted literally, it would seem to banish from the reports many cases which have sustained oral contracts under the statute by reason of their admission by those who are in a position to assert it. Certainly a void contract could not be given life by the mere admission of its existence, if the law absolutely forbids the contract to be made orally. In *Mott v. Kaldes*, 288 Pa. 264, Chief Justice MOSCHZISKER said at p. 276: "It often happens that those who, under the circumstances present in a particular case, seem not to be equitably entitled, are nevertheless allowed the support of the statute of frauds; since to hold otherwise would void the statute which must be followed as a declaration of public policy." Then following the statement that the lease was "illegal," it is stated at p. 277: " '. . . this interest has never ripened into a right and cannot ripen into a right by ratification based on subsequent conduct or by estoppel based on prior or subsequent conduct; for the courts to permit it to do so would be tantamount to . . . setting aside the Act of March 21, 1772.' " Admittedly this is strong language, but it cannot be accepted literally. In speaking of the contract as illegal it could not have been meant that it was entirely void, since under the specific terms of the statute it at least operated as an estate at will.

*Products Co. v. Refining Company,* supra, must be limited to its facts and to cases where there is a limitation on the power of the judiciary to afford the remedy.

We will follow the majority rule as the best to promote justice with regard to invoking the statute of frauds. The majority view is that a party will be deemed to have renounced his rights under the statute of frauds if he does not in some way make known to the court his intention to invoke it either by pleading specially or interposing a timely objection to testimony in support of the oral agreement, or by claiming its protection in some other manner that gives the opposition opportunity to meet the objection. This is the most equitable rule and need not be applied as a rule of substantive law irrespective of the circumstances. To permit a party to invoke the statute of frauds for the first time on appeal would be manifestly unfair. A party seeking to enforce his oral contract would be misled and refrain from proving facts by way of part performance, or otherwise, which would automatically take the contract out of the statute of frauds. It does not do to say, "You know what the law is, bring your contract within it." The facts are pleaded as they exist. Thus A orally sells land to B, who goes into possession and makes improvements. A refuses to convey. B pleads his contract. A must set up in some way the statute to put B on notice so he may be prepared to meet the objection. This was recognized in *Am. Products Co. v. Refining Company,* supra. In this way the defendant is given a warning that he must develop facts which will take his case out of the statute of frauds if he is to prevail, and it will not be enough for him to convince the jury of the existence of a parol contract.

As mentioned above, appellants made no effort whatsoever to make known their intention to invoke the stattute of frauds in the court below at any stage of the proceeding. Their attempt to invoke it on this appeal can-

not be recognized. Under the circumstances they must be held to have waived their rights under the statute.

The case was submitted to the jury on this theory, and there is ample testimony to support the jury's finding that there was a parol modification, which appellee had fully complied with *up to the time of the bringing of this suit,* and, consequently, was not in default for rent. As pointed out in appellants' previous appeal, the evidence of a subsequent parol modification of a written contract must be *convincing* to sustain a finding of its existence. The burden of proof imposed upon the party asserting the parol modification would not be satisfied by his word alone. Nor would evidence of part performance by payments of amounts less than those provided for by the contract be of sufficient corroborative force to carry the question to the jury. Such evidence, without more, does not weigh the scales one way or the other, and is entirely compatible with a finding that the landlord through indulgence and out of consideration for the tenant, who is financially embarrassed, allowed him a period of grace in which to make full payment, in the meantime accepting whatever he could pay on account of the rent due. If the law should definitely attribute to the receipt of an amount less than that due under a contract an intention to modify the provision of the written instrument to correspond to the amount received, it would make it extremely dangerous for landlords and others to adopt a lenient attitude toward their obligors and discourage indulgence and leniency in times of hardship. But here the evidence reaches beyond the word of Slanicus and the receipt of less than the amount due, and meets the burden placed upon appellee.

It is undisputed that from the time appellee entered into possession as tenant he fully complied with the terms of the parol modification by making payments *on a percentage basis,* which varied according to the conditions of business. The adoption of this new method of computing the rental due and strict adherence to it with

full knowledge of the lessors indicated an intention to depart from the terms of the written lease with respect to the rent payable. Otherwise it would have been vain to compute each week the amount due based on a certain percentage of the gross receipts. Some of these payments were made in cash and others by check, bearing the notation that they were for rent due during a particular week. The records kept by the Sferras of the weekly rental payments received from appellee did not indicate that there was any arrearage or that the payments were merely accepted on account of the rent due under the written lease. The payments in amounts different from the rent provided for by the written lease were accepted by the lessors without protest or demand for more. Some of the payments made by appellee after business conditions improved *exceeded the amount called for by the lease.* The evidence shows that for a period of over four years, up to appellants' attempt to eject appellee, he faithfully performed and executed the terms of the parol agreement substituting payment of rent on a percentage basis of the gross receipts for payment of a fixed amount. Now that the motion picture business has picked up and profits are being reaped, appellants cannot hold appellee responsible for rent, as stipulated by the written lease, at least for the period during which the oral modification has been executed by periodic payments in accordance with its terms.

Furthermore, the evidence is sufficient to justify findings that appellee succeeded to the rights of the original lessee, Urling, under an assignment from him; and that appellants, by recognizing appellee as assignee and accepting rent from him as tenant, waived the stipulation in the lease requiring written consent to an assignment. No discussion is necessary of the possibility of waiver of such a condition by the conduct of the lessor. This matter was fully discussed in the previous opinion, and the court below submitted the question to the jury on the basis of the rule there laid down.

It is useless to enter into a prolonged discussion of appellants' contention that since appellee admittedly failed to pay Urling the full consideration due under the assignment, he could not claim any rights under it. This defense is not available to appellants, being purely the concern of Urling as assignor. It may well be that Urling has released appellee of this obligation, or has given him an extension of time in which to perform. However this may be, there was sufficient evidence to show that appellee did take over the lease as the assignee of Urling, and his compliance or noncompliance with the provision of the assignment respecting the consideration due Urling has no material bearing in this case. Appellants cannot defeat his rights as assignee on the ground of his failure of consideration to his assignor.

Appellants contend that the terms of the parol modification, even if appellee's testimony is accepted at its face value, are so vague, uncertain and lacking in precision as to render it unenforceable under the law. We need not consider the evidence in this respect, since this is not an attempt to enforce the agreement. It may be that because no percentage was fixed, it could not be accorded legal recognition as an executory contract, but in so far as the parties have executed it, the question whether its terms are sufficiently certain to meet the requirements of law drops out of sight. What is to be done in the future may be another question.

The last matter remaining to be considered is appellants' contention that at the time of the assignment of the lease by Urling to appellee, Urling admittedly was in default for rent in the amount of $1,500, which has never been paid them by either appellee or his assignor. It does not appear that appellants have made any demand upon appellee for the payment of this back rent. Their conduct in accepting appellee as tenant and receiving rent on a modified basis over a period of years has effectively waived their right to eject him for this default; and, even if enforceable, at least reasonable

notice of their intention to compel its payment would be required. Nothing need be said with regard to their right in the future to compel this default to be made good. It is sufficient that it is not involved in the present case.

Judgment affirmed.